# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1956

_____

| | | |
|---|---|---|
| Marianne Casteel, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas. |
| Continental Casualty Company, | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: November 12, 2001
Filed: December 10, 2001

_____

Before McMILLIAN, BOWMAN, and STAHL,[1] Circuit Judges.

_____

STAHL, Circuit Judge.

Plaintiff-Appellant, Marianne Casteel, appeals a grant of summary judgment in favor of Defendant-Appellee, Continental Casualty Company ("Continental"), on her claims of breach of contract and bad faith. At issue is a $30,000 accidental death and dismemberment policy issued by Appellee to Appellant's ex-husband. We affirm.

_____

[1] The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

Continental issued an accidental death and dismemberment policy with $1,000 in basic coverage free of charge to Robert Casteel ("Robert") as a benefit of Robert and Marianne Casteel ("Marianne") being Chase Manhattan USA, N.A. cardholders. On January 20, 1997, Robert elected additional accidental death and dismemberment insurance in the amount of $30,000 and listed his wife, Marianne, as the beneficiary. Beginning on March 1, 1997, the Casteels' charge card was billed $14.85 per quarter for the additional $30,000 of coverage.

On April 4, 2000, Robert and Marianne were divorced. Shortly thereafter, on May 17, 2000, Robert called the Chase Manhattan customer service center and informed Chase that he desired to cancel the $30,000 supplemental insurance policy, explaining that "my wife took it out on me and there's no reason of doing it because she's not my wife anymore." After verifying his date of birth, the customer service agent complied with his request and discontinued his supplemental coverage.[2] According to the terms of the policy, Robert was covered through the end of that quarter, which concluded on May 31, 2000.

Marianne called Chase Manhattan on June 20, 2000, to remove an unauthorized user, alleged by Marianne to have been Robert, from her credit card.

---

[2] Continental claims that it sent Robert a "Reduce to Basic Letter," indicating that he had cancelled his supplemental coverage and retained only the original $1,000 of basic insurance. Neither party, however, has provided evidence that Robert Casteel actually received Continental's "Reduce to Basic Letter." Regardless of whether such letter was actually sent, it is undisputed that Marianne was never notified by Continental of Robert's decision to discontinue his supplemental coverage.

Approximately three weeks later, on July 9, 2000, Robert was killed in an automobile accident. Marianne filed a claim for benefits with Continental on August 8, 2000. Continental paid out $1,000 pursuant to the complementary policy, but denied Marianne's claim for benefits under the supplemental policy on the grounds that such coverage had been cancelled on or about June 1, 2000.

Soon after Continental denied her claim under the $30,000 policy, Marianne filed suit in the Circuit Court of Washington County, Arkansas, accusing Continental of breaching its contract of insurance with her and committing the tort of bad faith. In her complaint, she alleged that she had purchased the supplemental policy for her husband and that any attempt by Robert to cancel coverage without her permission was invalid. Continental removed the case to federal court on September 28, 2000, and in March 2001, filed a motion for summary judgment, claiming that it had satisfied its obligations under the policy. On April 11, 2001, the district court[3] granted Continental's motion, and Marianne filed a timely appeal to this Court.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ulrich v. St. Paul Fire and Marine Ins. Co., 912 F.2d 961, 963 (8th Cir. 1990). We review the record *de novo*, construing it in the light most favorable to the non-moving party. Thelma v. Bd. of Educ., 934 F.2d 929, 932 (8th Cir. 1991).

---

[3] The Honorable Jimm Larry Hendron, United States District Judge, Western District of Arkansas.

Robert was eligible for Continental's death and dismemberment insurance as a result of his status as an authorized Chase Manhattan card holder, and Continental properly discontinued the $30,000 in supplemental coverage upon his clear and unequivocal request.[4]  Therefore, at the time of his death, Robert was only covered by the complementary $1,000 policy, the benefits of which Continental promptly paid to Marianne as the named beneficiary.[5]  Marianne has not demonstrated the existence of any disputed facts that are *material* to the question of what Continental's

---

[4] Notwithstanding her arguments to the contrary, Marianne did not have a vested interest in this *accident and dismemberment* policy, and Robert was not required to secure her approval before cancelling his coverage.  As Robert's wife, Marianne would have had rights under Arkansas law protecting her vested interest in any *life insurance* policy he may have held.  See Ark. Code Ann. 23-179-128; Scales v. Union Cent. Life Ins. Co., 200 Ark. 869 (1940).  However, once they were divorced, Marianne no longer had the right to insure Robert's life.  See Ark. Code Ann. 23-179-128(b).

[5] Had Marianne not been the named beneficiary, she may not even have been entitled to the $1,000 proceeds because, upon their divorce, Marianne ceased to be an "eligible family member" of Robert, and would have no longer received priority in the distribution of benefits.

obligations were under the insurance policies.[6]  Accordingly, the district court properly entered judgment in favor of Continental.

 We affirm.


A true copy.


 ATTEST:


 CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

 [6] Marianne also maintains that she is entitled to recover the $30,000 because Robert's death occurred during the insurance policy's grace period, which ensured that coverage stayed in effect so long as the premium was paid within thirty-one days of when it was due.  In response to this argument, the district court found that "[e]ven if the policy had not been cancelled on May 17, 2000, the policy should have expired by its terms no later than July 1, 2000, as there is no evidence that any premiums were paid after March 1, 2000."  Marianne insists, however, that the grace period did not begin to run until June 10 because the terms of the policy state that the premium will be charged to the credit card "during the first week of March, June, September, and December."  In accordance with the duty to construe "ambiguous" provisions in a light most favorable to the non-moving party, Marianne argues that the relevant date, which triggered the running of the thirty-one day grace period, is the Saturday of the first full week of June 2000, or June 10 (even though the record demonstrates that no premium had ever been billed later than the fifth of the month).  Marianne's tortured construction of the policy, offered in the hopes of creating some ambiguity so as to avoid summary judgment, was properly rejected by the district court in light of the fact that no payment was ever, in fact, made after the March-May quarter's premium was billed on March 5, 2000.  Consequently, any retroactive coverage afforded by the grace period was never triggered.  More importantly, however, our determination that Robert's cancellation of the policy was effective on May 17, 2000 renders this "grace period" argument irrelevant.