# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1908
No. 01-2010

_____

John Beatty; Thomas Beatty; William   *
Gleason; Timothy Krieger; David   *
Pichotta,   *
  *
    Appellants/Cross-Appellees,   *   Appeals from the United States
  *   District Court for the District
v.   *   of Minnesota.
  *
North Central Companies, Inc., et al.,   *     [TO BE PUBLISHED]
  *
    Appellees/Cross-Appellants.   *

_____

Submitted: February 11, 2002

Filed: February 28, 2002

_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

_____

PER CURIAM.

North Central Companies, Inc. ("North Central"), buys and resells bulk agricultural products. In this case, five former employee-traders sued North Central and its owners, alleging that North Central's formula for compensating traders violated (1) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968; (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461; and (3) state tort and contract law. The district

court[1] granted North Central summary judgment dismissing the traders' claims but denied North Central's request for an award of attorney's fees under ERISA. The traders appeal the dismissal of their RICO and ERISA claims. North Central cross-appeals the denial of attorney's fees. Reviewing the district court's grant of summary judgment de novo, see Casteel v. Cont'l Cas. Co., 273 F.3d 1142, 1143 (8th Cir. 2001) (standard of review), we affirm.

1. The RICO Issue. During the period in question, North Central traders were paid commissions on the sales they negotiated. To calculate a trader's commissions, North Central began with the gross revenues from that trader's sales and subtracted North Central's costs to purchase the commodities sold and certain price adjustments for previous trades. This yielded the trader's gross profit. North Central then subtracted expenses specific to that trader plus a pro rata share of its general business expenses, which yielded the trader's net profit. North Central paid traders commissions equal to seventy percent of their net profits. The business expenses allocated to a trader's account included federal excise taxes owed and paid by North Central because it employed the trader -- payroll taxes imposed under the Federal Insurance Contributions Tax Act (FICA), 26 U.S.C. §§ 3101-3121, the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301-3311, and Medicare. Thus, the traders were not paid a commission on the funds North Central used to satisfy these payroll tax obligations.

Plaintiffs assert that North Central's compensation formula violated these federal excise tax statutes by improperly shifting its obligations as employer to its employees, and that the resulting mail fraud was a "predicate act of racketeering" sufficient to support their RICO claims. See 18 U.S.C. § 1962(c). We disagree. Assuming without deciding that an employer's violation of these federal tax statutes

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

could in a proper case be a predicate act for purposes of RICO, we agree with the district court that plaintiffs failed to show a violation of these statutes, much less mail fraud. Plaintiffs' theory presupposes that each trader's gross profit as determined by North Central belonged to that trader, so that when North Central subtracted federal excise tax payments from that amount, it improperly used employee money to pay its payroll tax obligations as employer. But the gross profits did not belong to the traders. Calculation of gross profit was merely a step in the formula by which North Central determined how much of *its money* would be paid to traders as commission compensation. Plaintiffs cite no federal tax authority for the proposition that this kind of compensation formula violates the federal excise tax statutes. In our view, the theory is entirely without merit. Thus, the district court properly granted summary judgment dismissing plaintiffs' RICO claims.

2. The ERISA Issue. In 1989, at the traders' request, North Central established an employee profit sharing plan to shelter trader income from immediate income taxation. At the outset, the traders understood that North Central would fund the plan without increasing their total compensation. To meet that objective, North Central reduced the traders' share of their net profits by an amount equal to North Central's contributions to the profit sharing plan. For example, at the present time, each North Central trader receives a commission equal to 60.87% of net profits, and North Central pays approximately one-fourth of its 39.13% share into the profit sharing plan. The commissions paid directly to the traders and the deferred compensation paid into the profit sharing plan equal 70% of their net profits.

Plaintiffs argue that this funding arrangement breached defendants' fiduciary duties under ERISA because North Central is using the traders' money to fund the profit sharing plan, making it an employee-funded plan subject to loss of its tax-exempt status for failure to comply with the requirements of a "Section 401(k)" retirement plan. See 26 U.S.C. § 401(k) and its implementing Treasury Regulations. Once again, this argument is without merit because it is based upon a fallacy -- that

seventy percent of the traders' net profits as calculated by North Central for purposes of its compensation formula were monies owned by the traders. In fact, any amounts not owing to the traders as commissions -- including amounts paid out of North Central's share of net profits to fund employee benefits -- are monies belonging to North Central and are therefore available to be paid as employer contributions to a profit sharing plan that is not a qualified employee-funded 401(k) plan. Thus, it is not surprising that no federal agency has threatened plan disqualification, despite a Department of Labor audit in January 1999. For this reason alone, defendants were entitled to summary judgment dismissing plaintiffs' ERISA claims, and we need not consider the alternative grounds defendants have urged on appeal.

3. The Attorney's Fee Issue. North Central argues the district court abused its discretion in denying North Central's request for its attorney's fees in successfully defending plaintiffs' ERISA claims. See 29 U.S.C. § 1132(g). The district court found the timing of this litigation suspect because it was initiated by plaintiffs in the midst of North Central's attempts to enforce restrictive covenants against them. But the court denied an award of fees because the ERISA claims, though unsuccessful, were not "purely retaliatory or frivolous." North Central argues the district court erred by failing to analyze each of the factors relevant when evaluating a request for attorney's fees under ERISA.[2] However, a district court is not required to consider all of the factors in every case. See Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997-98 (8th Cir. 1999). Here, we agree with the district court that plaintiffs' good faith in asserting ERISA claims in the midst of on-going litigation with their former

---

[2]"[T]he degree of culpability or bad faith; the ability to pay an award for attorney fees; the deterrent effect an award would have on others; whether the attorney fees are requested to benefit the other plan participants or to resolve legal issues; and the relative merits of the parties' positions." Molasky v. Principal Mut. Life Ins. Co., 149 F.3d 881, 885 (8th Cir. 1998), quoting Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 623 (8th Cir. 1994).

employer, and the relative merits of those claims, were the most important factors in determining whether defendants should be awarded part of their attorney's fees for successfully defending the ERISA portion of this lawsuit. Though we might have viewed plaintiffs' apparent motives and the merits of their ERISA claims less favorably, we conclude the district court did not abuse its discretion in denying North Central's fee request.

The judgment of district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.