# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1089

_____

| | | |
|---|---|---|
| Gail L. Cronquist, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| City of Minneapolis, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2000
Filed: February 6, 2001

_____

Before McMILLIAN, HEANEY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Gail Cronquist, a former officer with the Minneapolis Police Department (MPD), sued the City of Minneapolis under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3 (1994), the Minnesota Human Rights Act (MHRA), Minn. Stat. Ann. § 363.03 (West 1991), and the First and Fourteenth Amendments after the City disciplined her and eventually terminated her employment following several instances of harassment of her subordinates. Cronquist alleged that the City's disciplinary justification was pretext and that her employment was terminated because of sex discrimination and retaliation for an earlier lawsuit she brought against the City. The

District Court[1] granted summary judgment to the City on all claims and Cronquist appeals. We affirm.

## I.

Cronquist first joined the MPD in 1983, and was promoted to Sergeant in 1991. In 1991, Cronquist sued the City in Minnesota state court alleging that she had been sexually harrassed by her supervisor, Lieutenant Richard Storck. The matter settled out-of-court in 1994, and under the terms of the settlement Cronquist received $200,000 and other relief, which included the right to laterally transfer twice within four years of the settlement agreement.

Later in 1994, Cronquist exercised her right to transfer and moved from the Child Abuse Unit to the Backgrounds Unit. Cronquist's original supervisor in the Backgrounds Unit was Lieutenant David Martens, but in January 1995, Captain William Berg became her supervisor. During Cronquist's tenure in the Backgrounds Unit, she was the subject of a harassment complaint by one of her subordinates, officer Roger Brotkowski, who alleged that Cronquist had harassed him on the basis of his obesity. At the same time, Cronquist complained that Captain Berg had harassed her. The City investigated each complaint.

During the investigation of Cronquist's complaint against Captain Berg, she temporarily moved to an assignment as a shift supervisor in the Second Precinct. After Cronquist moved, a second officer in the Backgrounds Unit, officer Larry Swanson, came forward with a sexual harassment complaint against Cronquist.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

At the conclusion of the City's investigation, Cronquist's complaint against Captain Berg was not sustained. Officers Brotkowski and Swanson's complaints against Cronquist were sustained. In determining an appropriate punishment for the sustained findings against Cronquist, the City deemed the "second" finding not grounds for termination under the City's harassment policy, as Cronquist had not been afforded an opportunity to correct her behavior. The City reprimanded Cronquist for her violations and referred her for supervisory training.

In December 1997, Cronquist sued the City, alleging that her punishment for the Brotkowski and Swanson complaints was motivated by gender and in retaliation for her successful 1991 sexual harassment suit. Specifically, the complaint alleged that three adverse actions against Cronquist provided evidence of discrimination: (1) the sustaining of officer Brotkowski's harassment complaint against Cronquist and the resulting discipline; (2) the dismissal of Cronquist's sex discrimination and sex harassment complaint against Captain Berg;[2] and (3) the sustaining of officer Swanson's sexual harassment complaint against Cronquist and the resulting discipline.

In January 1998, the MPD lodged a third harassment complaint against Cronquist, made by officer John Lenart, a subordinate whom Cronquist supervised in the Second Precinct. Lenart's complaint alleged numerous sexually frank remarks by Cronquist as well as inappropriate touching.[3] The MPD investigated this

---

[2]We agree with the District Court that the City's decision to dismiss Cronquist's complaint against Captain Berg after a full investigation does not create a "materially adverse employment action."

[3]Internal Affairs concluded that Cronquist violated the City's sexual harrassment policy when she referred to officer Lenart's testosterone level on several occasions, called Lenart a "sex addict" and "horny," told Lenart "you can handcuff me anytime and have your way with me . . . ," touched him inappropriately and told him she "couldn't understand why anyone wouldn't want to fuck." Internal Affairs concluded that Cronquist's treatment of Lenart, her subordinate, had a "negative impact on him" and

complaint and found it to have merit. The MPD, considering the Lenart complaint as well as the earlier Brotkowski and Swanson complaints, terminated Cronquist's employment.

Cronquist subsequently amended her lawsuit against the City to include the claim that her discharge from the MPD was motivated by retaliation and gender discrimination. The District Court granted summary judgment to the City, holding that Cronquist failed to produce evidence showing that the City's non-discriminatory reason for terminating her—multiple instances of harassment—was pretextual. The District Court also held that Cronquist's evidence that she was treated differently than similarly-situated male police officers was insufficient and that she failed to establish an inference that decisionmakers in her disciplinary processes had either discriminated or retaliated against her. Cronquist appeals, arguing that the District Court erred in failing to apply a mixed-motive analysis to her claims, failing to link the adverse action taken against her to the filing of her discrimination charges, and granting summary judgment when a material issue of fact existed regarding whether the City's reason for her termination was pretextual.

On appeal, we review the District Court's grant of summary judgment de novo and apply the same standards as the district court. Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000); Fed. R. Civ. P. 56(c).

---

that her persistent conduct "made it difficult for him to come to work."

## II.

Two avenues exist by which a plaintiff can attempt to prove intentional employment discrimination. First, a plaintiff can proceed under the three-stage, burden-shifting standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Tex. Dep't of Com. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Rothmeier, 85 F.3d at 1332. Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. Id. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. Id.

Alternatively, the plaintiff can rely upon the standard set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), if the plaintiff produces direct evidence that an illegitimate criterion, such as gender, "played a motivating part in [the] employment decision." Id. at 258. Once the plaintiff establishes such direct evidence, the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. Id. If the employer fails to meet this standard, the employee prevails.

Cronquist first argues that the District Court failed to recognize direct evidence of discrimination and erred by analyzing her discrimination claims under McDonnell-Douglas, and not the "mixed-motive" standard of Price Waterhouse. This argument, however, is not properly before us. Cronquist never argued to the District Court that her case was governed by the Price Waterhouse standard. Despite the City's primary reliance on McDonnell Douglas in its memorandum supporting summary judgment, Cronquist's memorandum opposing summary judgment failed to cite either Price Waterhouse or McDonnell Douglas, nor did it present argument in support of any particular legal standard by which her claims should be adjudicated. Cronquist also

failed to raise the mixed-motive theory in her complaint, in her statement of the case, during oral argument on the summary judgment motion, or in any written or oral submission to the District Court. In the face of Cronquist's complete silence on the issue, the District Court reasonably assumed that "the parties appear to agree that [for purposes of the summary judgment motion] the sequence and allocation of proof for each claim should be governed by the Supreme Court decision in McDonnell Douglas Corp. v. Green." Order at 3. We hold that by failing to raise the mixed-motive argument in the District Court, Cronquist has waived the issue. See Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); Moad v. Ark. State Police Dep't, 111 F.3d 585, 587 (8th Cir. 1997) ("We have examined the record carefully and we find no evidence that this issue was ever raised in the district court. . . . We therefore decline to consider the issue . . . ."); Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1473 (8th Cir. 1996) ("We will not reverse a grant of summary judgment on the basis of an argument not presented below."); O.R.S. Distilling Co. v. Brown-Forman Corp., 972 F.2d 924, 926 (8th Cir. 1992) ("A party may not assert new arguments on appeal of a motion for summary judgment.").

In any event, even if Cronquist had raised the mixed-motive issue in the District Court and preserved it for appeal, it has no merit inasmuch as Cronquist has not presented any direct evidence of discrimination or retaliation. See Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring) (defining direct evidence negatively to exclude "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself."). This Circuit has clarified the Price Waterhouse standard by holding that direct evidence is "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182

(2d Cir. 1992)); see also Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997); Kriss v. Sprint Communications Co., 58 F.3d 1276, 1282 (8th Cir. 1995). "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference." Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999).

Cronquist sets forth numerous examples of what she contends is direct evidence of discrimination by the City sufficient to warrant analysis of her claims under the mixed-motive framework of Price Waterhouse. Based upon our thorough review of the caselaw and viewing the evidence in the light most favorable to Cronquist, we conclude that none of her claims require analysis under Price Waterhouse. Cronquist's claims of discriminatory discipline and termination depend on circumstantial evidence that does not "'directly reflect[] the alleged discriminatory attititude,'" of the MPD decisionmakers. Radabaugh, 997 F.2d at 449 (quoting Ostrowsky, 968 F.2d at 182). Instead, her evidence is of the sort that would require a series of inferences to be drawn before a discriminatory attitude could be attributed to those who made the employment decisions she challenges. See Schleiniger v. Des Moines Water Works, 925 F.2d 1100, 1101 (8th Cir. 1991) ("Simply because a discriminatory reason might be inferred . . . does not mean that a mixed motive case exists."). Therefore, even if Cronquist had properly preserved this argument for appeal, the District Court properly chose to analyze her claims under McDonnell Douglas because she failed to produce direct evidence of discrimination.[4]

## III.

Where the plaintiff fails to produce direct evidence of discrimination, the three-stage McDonnell Douglas burden-shifting analysis applies. See Euerle-Wehle v. United Parcel Serv., 181 F.3d 898, 900 (8th Cir. 1999). We apply the same analysis

---

[4]Her evidence is discussed in Sections III and IV of the Court's opinion.

in reviewing gender discrimination claims brought under Title VII and the MHRA. See Scott v. County of Ramsey, 180 F.3d 913, 917 (8th Cir. 1999) (applying the McDonnell Douglas standard to both Title VII and MHRA retaliation claims). Like the District Court, we will assume that Cronquist established a prima facie case of discrimination, and that the City offered a legitimate, nondiscriminatory reason for the discharge. The inquiry, then, is whether Cronquist has produced sufficient evidence to meet her burden of establishing pretext. To survive summary judgment at the third stage of the McDonnell Douglas analysis, "the rule in [the Eighth] Circuit is that an [employment-discrimination] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [a prohibited motive] was a determinative factor in the adverse employment decision." Rothmeier, 85 F.3d at 1336-37. Cronquist fails to meet this burden.

Cronquist first argues that the evidence illustrates pretext based on the decision to discipline her and then terminate her employment. She principally focuses on Chief Robert Olson, the final decisionmaker with respect to the termination of her employment with the MPD. Cronquist attempts to illustrate Chief Olson's discriminatory biases against her by alleging that he failed to act numerous times when he was required to do so. Specifically, Cronquist charges that Chief Olson failed to investigate the conclusion of Lieutenant David Martens that officers complained about Cronquist moving into the Backgrounds Unit because of her lawsuit and settlement with the City. Cronquist also contends that Chief Olson failed to follow up with investigator Pamela French on her report that Captain Berg created a hostile environment for women. However, Cronquist's inferential link is too attenuated; inconclusive stray remarks from nondecisionmaking officers in the Backgrounds Unit are not sufficient to establish a claim of discrimination. In addition, Chief Olson's failure to act on and investigate these stray remarks also fails to support Cronquist's claim of discrimination and retaliation.

Cronquist attempts to further impute bias to Chief Olson for failing to investigate Chief Deputy Jones's alleged destruction of evidence as alleged in a lawsuit wholly unrelated to Cronquist. Cronquist relies upon this previous suit to illustrate the MPD's struggle with prior harassment issues, and to support her claim that the atmosphere of the MPD is charged with tension against female officers. The case, however, is simply irrelevant to Cronquist's claims of discrimination. Background facts in a separate, unpublished opinion about matters unrelated to those here do not tend to make the City's disciplinary justification for Cronquist more or less likely to be pretext. We find that Cronquist's reliance on such a case is misplaced.[5]

In addition to Chief Olson, Cronquist claims that other MPD officials involved in the investigation of the harassment claims against her unlawfully considered and injected illegitimate criteria into the decisionmaking process. However, the evidence that Cronquist raises in this regard falls short. Nearly all of the evidence that Cronquist relies upon is hearsay or double-hearsay opinions from nondecisionmaking officers or officials. For example, Cronquist's evidence regarding discrimination and retaliation as the source of officer Brotkowski's complaint is almost exclusively based upon double hearsay within her own affidavit. The remainder of the evidence is the deposition testimony of MPD Director of Personnel Pamela French, which simply reports hearsay. Cronquist's reliance on affidavits based on hearsay cannot defeat a motion for summary judgment. See Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995); JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 737 (8th Cir. 1995) (requiring successful summary judgment defense to include more than inadmissible hearsay-based affidavit); Fed. R. Civ. P. 56(e).

---

[5]Additionally, we note that much of the case was overruled on appeal, see State v. City of Minneapolis, No. C8-98-363, 1998 WL 481891 (Minn. Ct. App. Aug. 18, 1998), the case is almost surely inadmissible as evidence at trial, and is of no import to the issues raised on appeal.

Cronquist notes that Director Lucy Gerold served on the investigation panel that recommended her discipline and claims that Gerold "sabotaged" her by not including in her final report Lieutenant Martens's statement of Background Unit resentment of Cronquist. Cronquist attempts to illustrate Gerold's bias against her by inferentially tying together Gerold's "omissions" in her report with her deposition statement that she was "dismayed" upon overhearing Cronquist state that "if you didn't get what you want, you should just sue." However, we find that Gerold's personal opinion on a separate matter and her failure to include the opinion of a non-decisionmaker in her report is not sufficient to support an inference of discrimination or retaliation. See Rothmeier, 85 F.3d at 1335 (holding that a trial judge can grant summary judgment if evidence is insufficient for reasonable trier of fact to infer discrimination, even where factual dispute on pretext exists).

Cronquist also argues that once Captain Berg learned of Cronquist's harassment complaint against him, he shared his negative opinions of Cronquist with Chief Olson, and urged him to expedite officer Brotkowski's complaint against Cronquist by utilizing a full-time investigator. But the evidence shows that Chief Olson recognized Captain Berg's disapproval of Cronquist and sought to investigate Cronquist's charge against Berg fairly and neutrally by removing it from the MPD's Internal Affairs Division. Accordingly, Chief Olson brought in three investigators to investigate Cronquist's charge against Captain Berg. Cronquist does not challenge Chief Olson's actions with any evidence indicating that the investigators' unsuccessful attempt to corroborate Cronquist's claims against Captain Berg was the result of any discrimination, retaliation or bias. Cronquist's evidence on this issue is comprised entirely of conjecture and surmise, and fails to support her claim.

Cronquist also re-argues the merits of the harassment claims that the MPD had sustained against her. Specifically, she argues that her conduct, as illustrated through officer Lenart's complaint, was only "dark humor," and she claims that Lenart was amenable to sexual joking and banter. Cronquist also offers an explanation as to why

she physically touched Lenart and identifies the genesis of her multiple jokes about his testosterone level. Likewise, Cronquist repeatedly mentions that officer Swanson's harassment allegation contains a discrepancy as to whether he heard Cronquist's offensive comment at the time it was made or at a later date. As these arguments do not support any inference of discrimination or retaliation against Cronquist, they are irrelevant to this appeal. In any event, Cronquist has already raised these same explanations and defenses, which were duly considered by MPD investigators before reaching any conclusions. As the District Court noted, "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995). We agree with the District Court that Cronquist does not present any evidence that the investigation or investigators were biased or discriminated against Cronquist. See Euerle-Wehle, 181 F.3d at 900 (finding no material issue as to pretext where employer makes "credibility determinations . . . reasonably and in good faith").

Cronquist finally argues that a material issue of fact exists regarding whether Gaynell Schandel, an investigator of Cronquist's claim against Berg, changed her negative conclusions about Berg's behavior in her final report at the behest of Bradley Johnson, the leading police department representative on the investigator team. Cronquist relies on Johnson's report mentioning "confusing statements" that were critical of Berg in Schandel's summary, but which Schandel and Johnson subsequently discussed and Schandel clarified. Because we agree with the District Court that the City's decision to dismiss Cronquist's claim against Captain Berg after a lengthy investigation does not constitute an "adverse employment action," this argument lacks relevance and does not support an inference of discrimination or retaliation against Cronquist. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997).

Cronquist's second principal argument is that summary judgment was improper because the District Court erred in rejecting her contention that the City's discriminatory animus may be inferred from Cronquist's harsh discipline, as opposed to the discipline meted out to similarly-situated male police officers. To show that she was "similarly situated," Cronquist must establish that she was treated differently from those employees whose violations were of "comparable seriousness." Lanear v. Safeway Grocery, 843 F.2d 298, 301 (quoting McDonnell Douglas, 411 U.S. at 804). Cronquist has the burden of proving that she and the other disciplined male police officers were "similarly situated in all relevant respects." Ricks v. Riverwood Int'l Corp., 38 F.3d 1016, 1019 (8th Cir. 1994). The test for whether employees are similarly situated to warrant a comparison to the plaintiff is "rigorous." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)

Cronquist cannot identify another MPD employee who had three harassment charges sustained against them, much less one who had such charges sustained against them and was not terminated. While Cronquist points to a number of male MPD officers and their infractions, none of those officers engaged in conduct that was of "comparable seriousness" to Cronquist's. Cronquist alone was found to have committed three separate acts of harassment against three different officers. Indeed, Cronquist's last and most egregious instance of harassment occurred after the MPD had put her on notice of her conduct and after she had undergone training in response to her two earlier instances of harassment. The City's graduated disciplinary guidelines, in effect since 1993, provided that supervisors would be terminated upon a second offense of sexual harassment. The guidelines clearly mandated termination of Cronquist upon her third offense. See Harvey, 38 F.3d at 972 n.2 (explaining that the "relevant inquiry" in an employee misconduct pretext case is whether the "employer believed [the] employee guilty of conduct justifying discharge") (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

## IV.

Finally, Cronquist argues that her discipline and termination from the MPD was the result of retaliation for her earlier sexual harassment claims against the MPD. To establish a prima facie case of retaliation, Cronquist must show that (1) she filed a charge of discrimination; (2) the MPD took adverse action against her; and (3) the adverse action was linked to the filing of the discrimination charge. Evans v. T.W. Servs. Inc. of Del., 930 F.2d 612, 614 (8th Cir. 1991) (per curiam). It is undisputed that Cronquist filed charges of discrimination against officers of the MPD and that she was disciplined and eventually terminated from the MPD. Cronquist's claim fails because she does not present sufficient evidence to create a jury question as to whether the adverse action taken against her was motivated by the filing of her 1991 lawsuit against the City or her harassment complaint against Captain Berg.

## V.

We conclude that Cronquist presented neither direct evidence of discrimination nor sufficient circumstantial evidence for a reasonable finder of fact to infer that the City's reasons for terminating her were pretext for intentional discrimination or retaliation. Accordingly, summary judgment was properly granted to the City.

The judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-