# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2053
_____

Viking Supply, a subsidiary of Gerald F.  *
Ogren, Inc., a Minnesota corporation,    *
     *
   Appellant,      *
     *   Appeal from the United States
v.      *   District Court for the
     *   District of Minnesota
National Cart Company, Inc.,      *
     *
   Appellee.      *

_____

Submitted: February 15, 2002
Filed: November 22, 2002
_____

Before McMILLIAN and RILEY, Circuit Judges, and KORNMANN,[1] District Judge.

_____

KORNMANN, District Judge.

Viking Supply ("Viking") sued National Cart Company ("National Cart") in a contract dispute. The district court[2] granted summary judgment in favor of National Cart and Viking appealed. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

# BACKGROUND

National Cart is a manufacturer of, among other things, shopping cart corrals ("corrals") which are used by various stores for the placement, handling, and storage of shopping carts. Viking was a distributor for National Cart's corrals for several years. Jerry Ogren ("Ogren"), Viking's president, acted for a period of time as a sales representative for various National Cart products, including corrals. It is not particularly clear whether Ogren was acting independently of Viking; all of this, however, is immaterial. This opinion will treat the sales representative or distributor as Viking for purposes of simplicity. One of Viking's customers (and thus, indirectly, National Cart's customer) was Target, then a subsidiary of The Dayton Corporation. In 1994, National Cart told Viking that it wanted Viking to enter into a distributorship agreement if Viking wanted to continue to sell National Cart's corrals to Target. National Cart sent Viking a proposed agreement which had a duration of one year and a strict termination clause, precluding termination at will. Viking refused to enter into a distributorship agreement with National Cart. During that same time period, or thereafter, National Cart asked Ogren to enter into a sales representative agreement and sent Ogren a form agreement.[3] Ogren refused to sign a sales representative agreement, stating that he did not like a written contract. On December 28, 1995, National Cart terminated Ogren's sales representative status. Viking was given the option of remaining as National Cart's distributor for corrals to Target and Shopko. On January 3, 1996, Viking wrote to National Cart:

> The next topic is Target and Shopko. You mentioned in your letter that you would like us to remain a distributor for National Cart Company. This can certainly be accomplished but we both need to have some rules. If we can receive assurances from you

---

[3]Ogren explained in his deposition that a distributor buys the product from the manufacturer, applies its own markup, and resells it to the customer. A sales representative, on the other hand, sells the product on behalf of the manufacturer, earning a commission.

that as long as we are selling your cart corrals to Target and Shopko, your Company will never attempt to sell them on a direct basis (sic). If you can agree to this, we will agree to selling only National Cart Corrals to both Target and Shopko.

In response, National Cart wrote to Viking on January 10, 1996:

> I am writing this letter in response to your letter dated January 3, 1996 . . . I would like you to continue to sell cart corrals as a distributor to Target and Shopko. As long as we have an agreement that you will not pursue another cart corral line we will protect these two accounts . . . [Y]ou are very welcome to buy from us at a 50/10 discount on any and all products. You will receive special pricing (liturgical discount) on the Target and Shopko cart corrals.

On September 23, 1999, National Cart faxed a letter to Viking and Ogren:

> Let this letter serve (sic) written notice that Viking Supply or Jerry Ogren will no longer represent or distribute any of National Cart Co. Inc. (sic) products.
>
> We will honor are (sic) existing orders and will no longer take any new orders as of September 30, 1999.

National Cart asserts that it terminated the distributorship relationship because, in July and August of 1999, Target told National Cart that it had become dissatisfied with Viking's service and pricing. National Cart contends that, on September 21, 1999, Target's buyer called Robert Unnerstall, president of National Cart, and told him that Target would not be purchasing National Cart products through Viking in the next millennium (the fall 1999 bidding cycle was for products Target needed in 2000). That decision was based in part on dissatisfaction with service and price and

because Target had instituted a policy of dealing only directly with manufacturers, whenever possible. Viking put forth no evidence to the contrary.

Ogren contends that he met with Target's buyer on September 30, 1999, and that he was informed at that time that National Cart had put in a direct bid to supply corrals to Target. Ogren contends that, coincidentally, as he was leaving, Rob Unnerstall's name tag from a September 29, 1999, visit to Target stuck to Ogren's shoe. National Cart denies that Unnerstall met with Target on September 29, 1999, and contends that it did not put in a bid for the corrals until some time in October, 1999.

National Cart continued to honor Viking orders until October 19, 1999. Viking failed to pay National Cart $106,938.12 for corrals supplied to Viking from July 29, 1999, through October 19, 1999.

In November of 1999, Viking instituted an action in Minnesota state court, claiming National Cart breached the alleged 1996 distributorship contract, breached the terms of the termination letter by submitting a bid directly to Target for corals prior to September 30, 1999, and claiming National Cart was unjustly enriched. Viking sought damages in the amount of $175,000 "per year," apparently indefinitely, and compensatory damages of $50,000 on each count. National Cart removed the action to the United States District Court for the District of Minnesota, and counterclaimed, seeking $106,933.12 for unpaid goods shipped to Viking. National Cart also counterclaimed for damages for fraudulent misrepresentation and unjust enrichment, claiming that Viking had fraudulently induced National Cart to reduce the price it charged to Viking for the corrals, to its detriment in excess of $75,000. Viking defended the counterclaim for unpaid invoices, claiming that it was entitled to recoupment of its investment in obtaining and maintaining the Target account and also claiming that it was entitled to at least that much in damages on its claim that National Cart breached the agreement not to contact Target before September 30,

-4-

1999, which agreement was set forth in the termination letter from National Cart to Viking.

National Cart filed a motion for summary judgment, contending that the alleged distributorship contract is barred by the Minnesota Statute of Frauds because it could not be completed in one year, that the writings between the parties did not amount to a written contract, that any such contract was terminable at will, that National Cart gave reasonable notice, and that National Cart did not breach the contract because performance was rendered impossible. National Cart further contended that it did not breach the terms of the termination letter because such letter did not amount to a contract and because the letter terminated the distributorship relationship as of September 23, 1999, rather than September 30, 1999. National Cart sought dismissal of Viking's unjust enrichment claim on the basis that there was no evidence National Cart had anything to do with the termination of Viking's relationship with Target. National Cart also sought summary judgment on that portion of its counterclaim seeking payment for goods sold and shipped to Viking.

The district court rejected the claim that the contract violated the statute of frauds but granted summary judgment on the breach of the distributorship contract claim. The ruling was based on the doctrine of frustration of purpose. The district court found that Viking and Ogren failed to dispute that the primary purpose of the contract (which the district court found was to have Viking act as the distributor of National Cart's corrals to Target and Shopko) was frustrated by Target's refusal to buy National Cart corrals from Viking, thus excusing National Cart's performance. As to the breach of the termination agreement, the district court found that the letter terminated the distributorship agreement as of September 23, 1999, and any contacts National Cart had with Target after that date were not in violation of the agreement. The district court further held that Viking had failed to present evidence establishing a genuine issue of material fact as to whether National Cart did indeed bid on Target's account prior to October 1, 1999. The district court rejected Viking's claim for unjust

enrichment because Viking had not shown that it suffered losses other than lost profits (and at a 34% markup, any investment in obtaining and keeping the Target business was surely recouped). As to National Cart's counterclaim, the district court found that Viking did not dispute that it owed National Cart $106,983.12 for corrals supplied to Viking from July 29, 1999, through October 19, 1999. Since the district court rejected Viking's unjust enrichment and recoupment claims, it granted summary judgment to National Cart on its counterclaim for unpaid invoices.

Viking appeals the district court's determinations that the purpose of the distributorship contract was frustrated, that National Cart was not unjustly enriched, and that Viking was not entitled to recoupment.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Casteel v. Continental Cas. Co., 273 F.3d 1142, 1143 (8th Cir. 2001). This Court reviews de novo the propriety of summary judgment, Ozark Heartland Electronics, Inc. v. Radio Shack, 278 F.3d 759, 762 (8th Cir. 2002), viewing the evidence and drawing all reasonable inferences in the light most favorable to the party opposing the motion – in this case, Viking. First Nat. Bank of Omaha v. Three Dimension Systems Products, Inc., 289 F.3d 542, 544 (8th Cir. 2002). We review de novo the district court's application of state law to the issues in a diversity case. Lancaster v. American and Foreign Ins. Co., 272 F.3d 1059, 1061 (8th Cir. 2001).

## DECISION

### I. Frustration of Purpose.

Viking contends that the district court erred in concluding that the primary purpose of the parties' contract was to have Viking act as a distributor of National Cart's corrals to Target and Shopko. Viking contends that, since Viking was already acting as a distributor at the inception of the written contract, National Cart's primary

purpose was instead to ensure that National Cart would continue to supply corrals to Target and Shopko without competition from other suppliers.

The doctrine of frustration of purpose was adopted by the Minnesota Supreme Court in J.J. Brooksbank Co. v. Budget Rent-A-Car Corp., 337 N.W.2d 372, 377 (Minn. 1983). See National Recruiters, Inc. v. Toro Co., 343 N.W.2d 704, 707 (Minn. App. 1984). The doctrine is based upon the Restatement (Second) of Contracts § 265 (1981), which provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate to the contrary.

National Recruiters v. Toro, 343 N.W.2d at 706. The party asserting frustration of purpose must show:

> 1. the party's principal purpose in making the contract is frustrated;
> 2. without that party's fault;
> 3. by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

Id. at 707, City of Savage v. Formanek, 459 N.W.2d 173, 176 (Minn. App. 1990).

Minnesota courts have held that the principal purpose:

> [M]ust be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense.

<u>City of Savage</u>, 459 N.W.2d at 176 (quoting Restatement (Second) of Contracts § 265, comment a (1981)).

Viking's argument that National Cart's principal purpose for entering into the written distributorship contract was to prevent competition for the Target business is unavailing. It is elementary that unless Target was willing to buy corrals from Viking, the distributorship contract would make little sense, if any. Whether the purpose was, as the district court found, to have Viking act as the distributor of National Cart corrals to Target and Shopko or whether the purpose was, as Viking asserts, to ensure that National Cart would continue to supply corrals to Target and Shopko without competition from other suppliers, Target's willingness to buy National Cart corrals from Viking was clearly the basis of the contract. National Cart's essential purpose in selling corrals to Target through Viking, with or without competition, was frustrated by the occurrence of an event. This event was Target's unwillingness to do business with Viking. This event completely frustrated the basic assumption upon which the contract was made and without which the contract would make no sense.

Viking argues that it was a basic assumption of the distributorship contract that Target might decide to buy direct from National Cart. It was not, however, a basic assumption that Target would refuse to buy corrals through Viking.

There was no evidence before the district court that National Cart was at fault in any way for Target's unwillingness to do business with Viking. Ogren himself stated that Target had adopted a general policy to deal directly with manufacturers. Ogren also admitted that, at about that same time, Target ceased doing business with Viking as to all other products from other manufacturers. In other words, Target decided to do no business with Viking. Viking contends that National Cart contributed to the frustration of the contract by failing to notify Viking of Target's concerns about Viking's service, by failing to notify Target of the existence of the

distributorship contract, and by attempting to sell directly to Target.  There was no obligation by National Cart to notify Viking that Target was dissatisfied.  Target was clearly aware of a distributorship arrangement between National Cart and Viking. Notwithstanding any such contract, the evidence is not refuted that Target simply was no longer willing to purchase through distributors.  There was no evidence submitted to show that National Cart attempted to sell to Target directly until after the purpose of the distributorship contract was frustrated and Viking was notified of the termination of the contract.  At that point, National Cart's further performance under the contract was made impossible and excused.

We find that the district court properly granted summary judgment to National Cart on Viking's breach of the distributorship contract claim based upon the doctrine of frustration of purpose.

## II.     Termination of the Distributorship Agreement.

We may affirm a district court's order, including an order granting summary judgment, on any basis supported by the record, even if that ground was not considered by the district court. Cochenour v. Cochenour, 888 F.2d 1244, 1246 (8th Cir. 1989).  A further basis for granting National Cart summary judgment on Viking's breach of the distributorship contract claim is that the contract was of indefinite duration and therefore terminable at will or the term of duration had ceased. National Cart contended below that the letters exchanged in January, 1996, did not constitute a contract because the letters did not contain all of the essential terms, such as duration. The district court did not address this contention even though it was raised. It was addressed on appeal by the parties.

The distributorship contract constitutes a contract for the sale of goods which is governed by the Uniform Commercial Code ("UCC").   See Minn. Stat. § 336-2-102; AKA Distributing Co. v. Whirlpool Corp., 137 F.3d 1083, 1085 (8th Cir. 1998)

(distributorship agreement is a contract for the sale of goods under Minnesota law). Pursuant to the Minnesota UCC:

> (1) The time for shipment or delivery or any other action under a contract if not provided in this article or agreed upon shall be a reasonable time.
>
> (2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.
>
> (3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

Minn. Stat. § 336.2-309. The absence of a specific duration is not essential to a contract under the UCC since the UCC supplies the rule in the absence of language in the contract setting forth duration. In the absence of a specific termination date, the distributorship is terminable at will. Minn. Stat. § 336.2-309(2). See Hayes v. Northwood Panelboard Co., 415 N.W.2d 687, 691 (Minn. App. 1988). Under Minnesota law, National Cart was required to give reasonable notice of termination. Reasonable notice is that period of time necessary to close out accounts and minimize losses. Sofa Gallery, Inc. v. Stratford Co., 872 F.2d 259, 263 (8th Cir. 1989). National Cart did agree to honor Viking's orders until September 30, 1999, and did in fact honor such orders into mid-October. The district court found, and its finding is based upon Ogren's testimony, that any claimed losses to Viking were in fact lost profits. The notice provided by National Cart was reasonable, as a matter of law, under the circumstances.

Viking argues that the duration of the distributorship contract was not indefinite because the agreement specified a continuing obligation "as long as"

Viking did not sell competing corrals to Target. Viking argues that, under Minnesota law, such a contract could not be terminated unless one party fails to perform.

The January 1996 correspondence between the parties says nothing about the duration of the alleged arrangement. Thus, the contract would ordinarily be terminable at will under Minn. Stat. § 336.2-309. The letters state, however, that in return for Viking's promise not to sell other corrals to Target and Shopko, National Cart would not sell directly to Target or Shopko. The letter reflects an understanding that any arrangement between the parties would continue "as long as" Viking continued to supply National Cart's corrals to Target. Minnesota law recognizes that section 336.2-309 does not permit unilateral termination at will in cases where the contract provides that it will continue "as long as" one party performs satisfactorily. See, e.g., Benson Cooperative Creamery Ass'n v. First District Ass'n, 276 Minn. 520, 151 N.W.2d 422, 427 (1967). Cf. W.K.T. Distrib. Co. v. Sharp Elec. Corp., 746 F.2d 1333, 1335 (8th Cir.1984) (applying Minnesota law and discussing the difference between contracts terminable at will and contracts that are to continue as long as one party performs); UFE Inc. v. Methode Electronics, Inc., 808 F.Supp. 1407, 1413 (D. Minn. 1992) (an agreement to enter into a requirements contract necessarily contains a durational term within the meaning of section 336.2-309(2)).

Based upon the foregoing analysis, the contract at issue here would not have been terminable at will by either party. However, the contract provides that "as long as" Viking is selling National Cart's corrals to Target, National Cart will never attempt to sell directly to Target. The undisputed evidence in the record, in the light most favorable to Viking, is that Target was no longer willing to do business with Viking.[4] Thus, even under Viking's interpretation of the duration of the contract, the

---

[4]Viking refutes only the fact and effect of the alleged failure of National Cart to notify Viking that Target was dissatisfied with Viking's performance. There was no contractual or legal obligation to do so.

-11-

duration of the contract had expired, thus excusing National Cart's further performance.

National Cart did not breach the distributorship contract with Viking, either because it was terminable at will or because it had expired before National Cart's notice.

## III. Unjust Enrichment.

Viking failed to set forth any authority for its unjust enrichment claim in its appellant's brief. We will therefore not address the issue. As we have held, "[i]t is not this court's job to research the law to support an appellant's argument." Lusby v. Union Pacific R. Co., 4 F.3d 639, 642 (8th Cir. 1993) (quoting United States v. Papia, 910 F.2d 1357, 1363 (7th Cir.1990)). See also Fed. R. App. P. 28(a)(9)(A) ("appellant's brief must contain ... appellant's contentions and the reasons for them, with citations to the authorities ... on which the appellant relies"); United States v. Stuckey, 255 F.3d 528, 531 (8th Cir. 2001).

## IV. Recoupment.

Viking contends that it is entitled to recoup its expenses, which it contends exceed $200,000, in developing the Target business, which expenses are claimed to offset any amounts owed to National Cart. Viking cites only to Clausen and Sons, Inc. v. Theo Hamm Brewing Co., 395 F.2d 388 (8th Cir. 1968). Viking failed to cite to any particular page or language from Clausen to support its claim. The only discussion in Clausen as to recoupment was that

> under Minnesota law where an exclusive franchise dealer under an implied contract, terminable on notice, has at the instance of a manufacturer or supplier invested his resources and credit in establishment of a costly distribution facility for the supplier's product, and the supplier thereafter unreasonably terminated the

contract and the dealership without giving the dealer an opportunity to recoup his investment, a claim may be stated.

Clausen, 395 F.2d at 391. This is not a case where National Cart unreasonably terminated a distributorship contract. National Cart acted only because Target first acted. It was Target's way or the highway.

## V. Breach of the Termination Letter.

Viking contends for the first time in its reply brief that the district court erred in granting summary judgment on Count II as to the claim for breach of the termination notice. We will not consider issues raised for the first time in a reply brief. Neb. State Legislative Bd., United Transp. Union v. Slater, 245 F.3d 656, 658 n. 3 (8th Cir. 2001). Further, Viking has failed to set forth any legal authority for this breach of contract claim, even in its reply brief, therefore precluding our further review.

## CONCLUSION

Accordingly, we affirm the district court's grant of National Cart's motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-