# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3991

_____

| | | |
|---|---|---|
| John Saulsberry, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| St. Mary's University of Minnesota, a | * | District of Minnesota |
| Minnesota non-profit educational | * | |
| institution, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 11, 2002

Filed: January 31, 2003

_____

Before McMILLIAN, BOWMAN and SMITH, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

John Saulsberry appeals from a final judgment entered in the district court[1] in favor of St. Mary's University of Minnesota (St. Mary's or the university) on his race discrimination and retaliation claims, in violation of Title VII, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and the Minnesota Human Rights Act, Minn. Stat. § 363.03 (MHRA). We affirm.

_____

[1]The Honorable Paul A. Magnuson, Senior United States District Judge for the District of Minnesota.

## BACKGROUND

In 1993, Saulsberry, an African-American, was working for a security company as a security guard assigned to St. Mary's Twin Cities campus in Minneapolis, Minnesota. The Twin Cities campus primarily offers night and week-end classes for adult students. St. Mary's also has a residential undergraduate campus in Winona, Minnesota. In 1995, St. Mary's hired Saulsberry as a security guard. He worked a split shift from 7 a.m. to 9 a.m. and from 4 p.m. to 10 p.m.

In the fall of 1996, Saulsberry sought permission to enroll in undergraduate classes at the Twin Cities campus at a reduced rate. St. Mary's written policy provided that full-time employees could "enroll in courses subject to the requirements of the employee's job and the approval of the employee's supervisor and the [university's] Vice President." The policy also provided that employees were entitled to a 100% tuition remission at the Winona campus, but did not provide for tuition remission at the Twin Cities campus. Brother Louis DeThomasis (Brother Louis), president of the university, explained that the reason for the disparity was economic because the Winona faculty were full-time salaried employees, whereas the Twin Cities faculty were part-time adjunct faculty, who were paid according to the number of students enrolled in the class. Brother Louis, however, had the discretion to grant university employees tuition remission at the Twin Cities campus. In doing so, he considered the benefit to the university and the benefit to the employee.

Although Brother Louis did not perceive a significant benefit to the university if Saulsberry obtained an undergraduate degree, he granted Saulsberry a 75% tuition remission. Saulsberry was also allowed to enroll in night classes during his regular work hours with no reduction in his wages. In 1996, Saulsberry took five classes over three semesters. Sometime in 1997, he was promoted to director of security and supervised one or two other employees. In that year, he took nine courses, all during his work hours. Saulsberry took eight courses in 1998 and six courses in 1999.

In January 1998, the university's vice president, Daniel Maloney, talked to Brother Louis about granting a tuition remission to his administrative assistant, Barbara Croucher, a white woman. Maloney wanted her to take business courses and obtain an undergraduate degree because she dealt with financial matters and other high profile administrative matters. Brother Lewis granted Croucher a 100% tuition remission, believing that the university would benefit if Croucher obtained a degree. Unlike Saulsberry, Croucher did not attend classes during her work hours. Saulsberry learned that Croucher was receiving a 100% tuition remission that month. In late January or early February 1998, Saulsberry complained to Maloney that the university was discriminating against him because of the tuition remission disparity between him and Croucher. In June 1998, the university promoted Croucher to executive director of financial and administrative affairs and she became Saulsberry's supervisor. In September 1998, two other employees were granted 100% tuition remission at the Twin Cities campus; one was an African-American.

In February 1999, Saulsberry filed discrimination and retaliation charges with the state department of human rights. After receiving a right-to-sue letter, Saulsberry filed an action in state court, alleging that the university had discriminated against him by awarding him a 75% tuition remission, while awarding 100% tuition remission to white employees, in violation of the MHRA, Title VII, and § 1981. He also asserted that after he complained to Maloney, the university retaliated against him. He claimed that Maloney limited the number of classes he could take during work hours. Saulsberry also claimed he was subjected to race-based comments. In particular, Saulsberry alleged that Maloney had made a comment that he needed lotion for his "ashy" skin; John Pyle, who had replaced Croucher as Maloney's administrative assistant, and a temporary receptionist had referred to him as "Shaft"; and the receptionist had referred to him as a "black dog." Saulsberry also alleged that Croucher's promotion was a retaliatory act and that, after she became his supervisor, she changed his hours and duties, removed his name from a campus mailbox, moved

-3-

his office, and promoted the only other security employee to the associate director of security.

St. Mary's removed the case to federal district court and moved for summary judgment. St. Mary's argued that Saulsberry's MHRA discrimination claim was untimely because it was not filed within the one-year statute of limitations of Minn. Stat. § 363.03, subd. 3. The university also argued that summary judgment was appropriate on the state law claim, as well as on the Title VII and § 1981 discrimination claims, because Saulsberry could not prove that the white employees who received 100% tuition remission were similarly situated to him. In support, the university submitted evidence that, in addition to Croucher, other white employees had received 100% tuition remission, but that none of them had taken classes during work hours. Believing that Saulsberry had raised a hostile work environment claim, the university argued that the complained of comments did not create a hostile work environment. As to the retaliation claim, the university argued that the alleged retaliatory actions were not adverse actions. Among other things, the university noted that his name was removed from the campus mailbox and his hours were changed for only three days. As to any action that might be deemed adverse, the university argued that Saulsberry could not prove causation. In particular, as to Croucher's actions, the university submitted evidence that Croucher had not learned of Saulsberry's complaint to Maloney until after he filed his discrimination charges in February 1999. The university also presented legitimate, non-retaliatory reasons for the actions and argued that Saulsberry had no evidence of pretext. For example, it noted that Croucher's promotion and appointment as Saulsberry's supervisor in June 1998 was part of an administrative restructuring.

In response, Saulsberry argued that the white employees who received 100% tuition remission were similarly situated to him because they were full-time

-4-

employees enrolled in undergraduate courses and Brother Louis had made the remission decisions. Saulsberry also responded that he was not raising a free-standing hostile work environment claim, but was offering evidence of the race-based comments to show an adverse action in his retaliation claim.

The district court granted St. Mary's motion for summary judgment in part and denied it in part. Although the university had not raised a timeliness defense as to the Title VII tuition remission discrimination claim, the district court found that it was time-barred, as was the MHRA claim. The district court reasoned that the claims accrued by January 31, 1998, when Saulsberry learned that Croucher had received a 100% tuition remission. Because he had one year to file a charge under MHRA, Minn. Stat. § 363.03, subd. 3, and 300 days under Title VII, 42 U.S.C. § 2000e-5, the district court held that February 16, 1999 charge was untimely filed.

The district court also granted the university's motion for summary judgment on Saulsberry's retaliation claim. The district court held that the complained of comments did not constitute a racially hostile work environment, and thus were not adverse actions. In addition, the district court held that Saulsberry had failed to prove causation or that the university's proffered reasons for the complained of actions were a pretext for retaliation.

However, the district court denied the university's motion for summary judgment on the § 1981 claim. Before trial, the district court granted St. Mary's motions to exclude Maloney's "ashy skin" comment, Pyle's and the receptionist's "Shaft" comments, and the receptionist's "black dog" comment. The district court also limited the evidence to the tuition remission disparity between Croucher and Saulsberry and to the period before January 31, 1998, the date the district court believed the claim had accrued.

At trial, Saulsberry produced no evidence that he was similarly situated to Croucher. Although Saulsberry testified that he made up the time he spent in class on weekends, his work schedules did not support his testimony, and he produced no other evidence in support. After the jury found in favor of St. Mary's on the § 1981 tuition remission disparity claim, Saulsberry filed a motion for a new trial, which was denied. This appeal followed.

## DISCUSSION

On appeal, Saulsberry first argues that the district court erred in holding that his Title VII and MHRA claims were time barred. He argues that the claims were timely filed because the denial of the 100% tuition remission was a continuing violation occurring each semester with the last discriminatory act in September 1998, within the one-year and 300- day periods, respectively, for the MHRA and Title VII. He draws an analogy to Equal Pay Act violations in which "[e]ach week's pay check that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII." Bazemore v. Friday, 478 U.S. 385, 395 (1986). The university argues that the decision awarding Saulsberry a 75% tuition remission was a discrete act, not a continuing violation.

In National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002) (Morgan), the Supreme Court recently addressed Title VII filing requirements. See Jensen v. Henderson, No. 01-2921, 2002 WL 31748850, at *3, (8th Cir. Dec. 10, 2002). In Morgan, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in the timely filed charges." 122 S. Ct. at 2072. However, untimely discriminatory acts may constitute relevant "background evidence in support of a timely claim." Id. In contrast, the Court held that because a hostile work environment was a continuing violation by nature, the

"the employee need only file a charge [within the relevant time period] of any act that is part of the hostile work environment." Id. at 2075.

Although we are inclined to agree with Saulsberry as to the timeliness issue, we need not decide this issue. Any error regarding the issue was harmless. It is well-established that "[w]e may affirm a district court's order, including an order granting summary judgment, on any basis supported by the record, even if that ground was not considered by the district court." Viking Supply v. National Cart Co., 310 F.3d 1092, 1097 (8th Cir. 2002) (Viking Supply). As the university noted in its summary judgment motion, the elements of a MHRA, Title VII, and § 1981 discrimination claims are the same. Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001) (Cronquist) ("We apply the same analysis in reviewing [] discrimination claims brought under Title VII and the MHRA."); Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997) (Nash Finch) ("The elements of a Title VII disparate treatment claim and a § 1981 claim are identical."). Because Saulsberry had no direct evidence of discrimination, his discrimination claims were subject to the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis. See Cronquist, 237 F.3d at 924.

Assuming that Saulsberry had established a prima facie case, as the university argued in its summary judgment motion, Saulsberry provided no evidence that its reason for the tuition remission disparity between him and the white employees was pretextual. In his response to the motion for summary judgment, Saulsberry argued that discriminatory animus could be inferred because white employees who were similarly situated to him received 100% tuition remission, while he received only a 75% tuition remission. Although the white employees were similarly situated in some respects, Saulsberry had the burden of proving that they were "'similarly situated in all relevant respects.'" Id. at 928 (quoting Ricks v. Riverwood Int'l Corp.,

-7-

38 F.3d 1016, 1019 (8th Cir. 1994)). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is 'rigorous.'" Id. (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). Saulsberry did not satisfy his burden. It was undisputed that no other employee that received 100% tuition remission attended classes during his or her work hours. Thus, summary judgment was appropriate on the MHRA and Title VII claims concerning discrimination in tuition remission.

For the same reason, summary judgment would have been appropriate on Saulsberry's § 1981 claim. However, that claim was tried to a jury. The jury, apparently very quickly, returned a verdict in favor of St. Mary's. At trial, Saulsberry adduced no evidence from which a reasonable jury could have concluded that the real reason for the tuition remission disparity between him and Croucher was race discrimination. See Feltman v. Sieben, 108 F.3d 970, 975 (8th Cir. 1997), cert. denied, 522 U.S. 1075 (1998). He offered no evidence that he was similarly situated in all relevant aspects to Croucher. Besides the differences in their job responsibilities, Croucher did not attend classes during her work hours, whereas Saulsberry was paid for the hours he attended class. Although at trial Saulsberry claimed that he made up the time he spent in class, his work schedules did not support his testimony, and he offered no other evidence in support of his claim.

Saulsberry argues that the verdict would have been different had the district court not erred in limiting the trial to the tuition remission disparity between him and Croucher and to the period before January 1998. Again, because we may affirm on any ground appearing in the record, we need not address the timeliness issue. See Viking Supply, 310 F.3d at 1097. Saulsberry argues that the district court erred in excluding evidence that, after Croucher received a 100% tuition remission, other white employees also received 100% tuition remissions. Timeliness issues aside, as

the university argued in its motion for summary judgment, the evidence of the other white employees was irrelevant because Saulsberry could not prove that they were similarly situated to him. It was undisputed that no other employee attended classes during his or her work hours.

The district court did not abuse its discretion in excluding evidence of the alleged race-based comments. The district court held that not only were the comments untimely, but went on to hold that no matter when the comments were made, they were inadmissible. This court has "carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process . . . from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." Mohr v. Dustrol, Inc., 306 F.3d 636, 640-41 (8th Cir. 2002) (internal quotation omitted). As the district noted, the "Shaft" and "black dog" comments were made by nondecisionmakers. Assuming Maloney was involved in the tuition-remission decision, his "ashy" skin comment was at most an isolated, stray comment unrelated to the decisional process. See id. In any event, any error in excluding the comments would be harmless. No reasonable jury could have inferred a discriminatory intent in the tuition remission decision from such comments. Nor did the district court abuse its discretion in its other evidentiary rulings.

The district court also did not err in granting summary judgment on Saulsberry's retaliation claim. To prove a prima facie retaliation claim, Saulsberry had to show an adverse employment action and a causal connection between protected activity and the action. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001). "Adverse employment actions must have a 'materially adverse impact' on the plaintiff's terms or conditions of employment." Id. (quoting Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998)). "Certain employment

actions cannot be characterized as adverse." Id. "Such actions include changes in the terms, duties, or working conditions that cause no materially significant disadvantage to the employee . . . or disappointment with changes in one's employment situation." Id. Saulsberry's evidence, viewed individually and as a series of events, does not establish an adverse action. See Nash Finch, 123 F.3d at 1160. Although Saulsberry argued that he suffered a material adverse change in his employment when Croucher was appointed as his supervisor and changed his hours and job duties, many of the actions were only temporary or not materially significant. In addition, he failed to offer evidence that her appointment was connected to his complaint to Maloney or that Croucher's actions towards him after she became his supervisor were connected to his complaint. The evidence was that Croucher did not know about his complaint until he filed charges in February 1999. Even assuming Saulsberry had established a prima facie case, Saulsberry provided no evidence that the university's reasons for the actions were a pretext for illegal retaliation. We do not "sit as [a] super-personnel department[] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Cronquist, 237 F.3d at 928 (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)). As discussed above, there was no evidence from which a reasonable jury could have concluded that St. Mary's discriminated against Saulsberry on the basis of race or acted in retaliation to his complaint about tuition remission disparity.

We have reviewed Saulsberry's other arguments and they are without merit. Accordingly, we affirm the district court's judgment.[2]

---

[2]We deny the university's motion to strike portions of Saulsberry's brief and appendix as moot and deny its motion for sanctions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.