Mary I. WEILAND, Plaintiff,

v.

**EL KRAM, INC., d/b/a Pizza Hut of America, Inc., a/k/a Pizza Hut, Inc., Defendant.**

**No. C01–3072–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Dec. 10, 2002.

James H. Gilliam, Brown Winick Graves Gross Baskerville Schoenebaum, Des Moines, IA, Eric J. Pelton, Thomas B. Langlas, Kienbaum, Opperwall, Hardy & Pelton, PLC, Birmingham, MI, for Defendant.

Michael J. Carroll, Coppola, Sandre, McConville & Carroll, PC, West Des Moines, IA, for Plaintiff.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................1143
   A. Procedural Background ........................................1143
   B. Undisputed And Disputed Facts ...............................1144

II. THE MOTION FOR SUMMARY JUDGMENT .............................1148
   A. Standards For Summary Judgment .............................1148
   B. The Parties' Burdens ........................................1148
   C. Summary Judgment In Employment Discrimination Cases ........1149

III. LEGAL ANALYSIS ..............................................1150
   A. Weiland's Retaliation Claim .................................1150
     1. Weiland's conduct ......................................1152
     2. Weiland's evidence of causal connection .................1154
   B. Disparate Treatment Claim ..................................1158

IV. CONCLUSION ..................................................1159

This matter is before the court on the Defendant's Motion for Summary Judgment filed on September 17, 2001. Plaintiff complains she was discriminated against in the terms, conditions, and compensation of her employment with the defendants. Specifically, the plaintiff alleges the defendant discriminated against her and subsequently terminated her because of her sex and in retaliation for her reporting an incident of sexual harassment. The defendant disputes these allegations and contends that judgment should be entered in its favor as a matter of law and against the plaintiff because the plaintiff does not establish her *prima facie* case that sex was a factor in her termination because she does not establish that she was treated differently than a similarly situated male. In the alternative, the defendant contends that even if the plaintiff is able to establish a *prima facie* case of sex discrimination, she cannot demonstrate that the defendant's reasons for her termination were merely pretextual. In addition, the defendant asserts that the plaintiff is unable to set forth a claim of retaliation for the following reasons: (1) she did not oppose a practice made unlawful by Title VII because the person who perpetrated the harassment was not an employee of defendant, and (2) there was no causal connection between plaintiff's complaint of sexual harassment and her termination.

## I. INTRODUCTION

### A. Procedural Background

On August 24, 2001, Mary I. Weiland ("Weiland") filed a complaint against her

former employer defendant El Kram, Inc., d/b/a Pizza Hut of America Inc., ("Pizza Hut") alleging claims of sexual discrimination and retaliation. Weiland contends that both led to her termination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Iowa Civil Rights Act ("ICRA"), IOWA CODE § 216. Weiland's state law claim is properly before the court pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Prior to bringing this action in federal court, Weiland exhausted her administrative remedies by filing a charge with the Iowa Civil Rights Commission ("ICRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), and received right-to-sue letters from the ICRC on May 31, 2001, and the EEOC on June 15, 2001. Pl.'s Compl., at Ex. A & B.

On October 24, 2002, Weiland resisted Pizza Hut's motion for summary judgment, and on November 11, 2002, Pizza Hut filed a reply in further support of its motion. Weiland timely requested oral argument on the motion for summary judgment. The court granted that request and held oral arguments on Pizza Hut's motion on December 4, 2002.

At the hearing, defendant Pizza Hut was represented by Eric Pelton & Thomas Langlas of Kienbaum Opperwall Hardy & Pelton, P.L.C., Birmingham, Michigan. Plaintiff Weiland was represented by Michael Carroll of Coppola, Sandre, McConville & Carroll P.C., West Des Moines, Iowa. This matter is now fully submitted.

### B. Undisputed And Disputed Facts

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues for trial, *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990), and the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). Nevertheless, the court will not attempt here a comprehensive review of the undisputed and disputed facts in the record, although some factual background is necessary to put in context the parties' arguments for and against summary judgment on the claims that remain at issue. Therefore, what is presented here is only a sketch of the essential factual background and factual disputes on the present record.

Weiland was originally hired by Pizza Hut on June 15, 1998 as a shift manager in its Humboldt, Iowa, restaurant. Pizza Hut promoted Weiland to general manager of its Algona, Iowa, restaurant that fall where she worked until her employment was terminated on August 9, 2000. As general manager, Weiland was a salaried employee whose hours varied anywhere from forty to eighty hours each week. Weiland generally worked from nine o'clock in the morning through the dinner hour, and then oftentimes until close. At a sales meeting sometime in February 2000, Weiland informed her direct supervisor, Area Coach Raymond Fish ("Fish"), that she would be changing her work schedule. Pl.'s App., at 000013. During the sales meeting, and in front of a group of general managers, Weiland stated that she would be working Monday through Friday from eight o'clock in the morning until four-thirty in the afternoon. Pl.'s App., at 000013. According to Weiland, another restaurant manager by the name of Dean Black spoke up and asked Fish when he too could start working those hours. Fish told him that "he could work those hours when his restaurant ran as well as mine did." Pl.'s App., at 000013. It is at this point that the parties' understandings differ materially, at times, concerning the

events leading up to Weiland's termination.

Pizza Hut claims that Weiland's changed schedule was about as light as the company could allow because it generally requires more than fifty hours each week of its general managers, including eight to nine peak periods—lunch and dinner. Under Weiland's changed schedule, she would only be working five peak periods—lunches Monday through Friday. With regard to Weiland's new schedule, Fish simply told her at the sales meeting to "make sure that my time card matched my schedule." Pl.'s App., at 000013.

Weiland contends that Fish taught her how to ensure that her time card matched her schedule by demonstrating the use of the special code "L" which stood for "other." Pl.'s Resistance, at 7–8. "I asked him how I should do it [change my clock times] and he told me to use code L for other." Pl.'s App., at 000089. Pizza Hut asserts that Fish taught Weiland how to use the code "L" in response to Weiland's question about how to clock in sick time or vacation time for employees in her restaurant. Pl.'s App., at 000089. That is, the code "L" can be used to change any employee's time card and it is Pizza Hut's contention that Weiland, as general manager, was taught by Fish how to enter the code "L" as a matter of course in order to run the restaurant, and not merely to change her own time cards. Pl.'s App., at 000098. Pizza Hut argues that Weiland manipulated her time so as not to reflect the actual schedule she was authorized to maintain, but to conceal the fact that she was not working her scheduled hours from eight o'clock in the morning until four-thirty in the afternoon, and instead was running personal errands. Def.'s Brief in Support of Mot. for Summary Judgment, at 8–9; Def.'s Reply Brief, at 2. The foundation for Pizza Hut's allegations and termination of Weiland are alleged complaints made to Fish by female shift managers who worked for Weiland, Fish's investigation and Weiland's actual time reports. Def.'s Brief in Support of Mot. for Summary Judgment, at 15; Def.'s App., at 109–113.

Weiland does not dispute that one of the functions of the code L is to clock in sick time or vacation time, and acknowledges that as general manager she was required to know this in order to keep accurate time records for her employees. Weiland disputes Pizza Hut's claims that she would remain on the clock while away from the restaurant on personal business. Weiland argues that when she was away from the restaurant and still on the clock, she was tending to restaurant business which included meeting with organizations desiring to do fund raisers, having repair work done, making purchases for the restaurant, or speaking with contractors. Pl.'s App., at 000014. For instance, Weiland recalls spending time away from the restaurant in order to meet with a gentleman she hired to build a cabinet for a "kids' corner" in the restaurant—one goal Fish had established for her—and to make the necessary purchases for the kids' corner. Pl.'s App., at 000014. Weiland's female shift managers' accusations concerning the number of hours she actually worked are misperceptions from Weiland's perspective because she alleges that her shift managers were unaware of a lot of the business she was doing for the restaurant, including obtaining bids from contractors about having the restaurant redone and visiting creditors Pizza Hut failed to pay. Pl.'s App., at 000089. According to Weiland, her shift managers would have been aware of the fund raising activities and things of that nature, but as to her meetings with contractors and creditors Weiland said, "Those were things I didn't share with them, they had no reason to know that." Pl.'s App., at 000089.

Furthermore, Weiland disputes Pizza Hut's contentions that Weiland's changed schedule was about as light as the company could allow and that such a reduction was a favorable gesture on the part of Fish toward Weiland. Def.'s Stmt. of Undisputed Facts, 2–3. In support of her argument, Weiland offers the affidavit of Brett Rapien ("Rapien"), a former general manager of the Mason City, Iowa, Pizza Hut Carry-out/Delivery restaurant, who worked as few as thirty hours some weeks according to Rapien's First Affidavit (Pl.'s App., at 169), and forty to forty-five hours each week during his last year of tenure according to Rapien's Second Affidavit (Def.'s Supplemental Appendix, at 1) despite Pizza Hut's purported policy that general managers be in the restaurant a minimum of fifty hours each week. Pl.'s Resistance, at 8.[1] In his First Affidavit, Rapien admits to changing his time on the restaurant's computer to appear as though he had been in the restaurant during his scheduled amount of time when in fact he was not in the restaurant during all of the hours he reported. Pl.'s App., at 170. According to Rapien, Fish knew that Rapien was changing the computer to reflect time when he was not actually at the restaurant, and approved of the practice so long as the restaurant continued to perform up to Pizza Hut standards. Pl.'s App., at 170.

Therefore, Weiland disputes Pizza Hut's alleged basis for her termination—manipulation of her time reports to reflect time Weiland was not working, but conducting personal business—and argues that the real reason for her termination was her complaining about an incident of sexual harassment that occurred when Lee Paradine ("Paradine") came to the Algona Pizza Hut on June 26, 2000 to perform a safety inspection. Pizza Hut does not dispute Weiland's factual account of what occurred during Paradine's June 26, 2000 safety inspection. Material to the parties' dispute is Weiland's perception of Paradine's conduct and whether she could have reasonably believed that when she reported the incident to Pizza Hut, that she was engaging in protected activity under Title VII.

In the course of conducting his inspection, Paradine allegedly sexually harassed Weiland. Pl.'s Response to Def.'s Stmt. of Undisputed Facts, at ¶ 11. Weiland contends that Paradine began rubbing and patting her back and behind within five minutes of entering the restaurant and commencing his inspection, and continued this practice relentlessly for the forty minutes to one hour the inspection lasted. Pl.'s App., at 000032–33. Paradine began rubbing and patting Weiland while she counted the cash from the register and proceeded to do the same as he followed her to and from the water heater. Weiland claims she insisted that Paradine stop touching her but he simply told her "Oh, honey, I'm not touching you," acting "oblivious" to her requests, and according to Weiland, "He just did as he pleased." Pl.'s App., at 000033.

The harassment escalated as the inspection continued with Paradine placing his hands around Weiland's waist and rubbing his hands in an upward and downward motion along Weiland's sides and into her breast area. Pl.'s App., at 000033. At one point, while Paradine was inspecting the walk-in cooler, but still standing directly in front of Weiland, he commented about the visibility of her breasts to others had the alarm been located next to the door in

---

1. A signed Affidavit of Brett Rapien was filed with Plaintiff's Appendix (# 24). Rapien alleges it was drafted by plaintiff's counsel. Def.'s Supplemental Appendix, at 1. Thereafter, and along with defendant's reply brief for summary judgment, a signed Second Affidavit of Brett Rapien (# 30) was filed which Rapien asserts defense counsel drafted.

such a way that required Weiland to extend her arm upward to switch it on in the event of an emergency. Pl.'s App., at 000034. Weiland asserts that she "would have made more of an issue out of it except for the dining room had customers in it. I thought I could handle it quietly myself." Pl.'s App., at 000034.

Approximately two hours after Paradine left, Weiland called her attorney friend, Mike Gabor ("Gabor"), to ask him whether she was within her rights to contact the police regarding Paradine's behavior. Pl.'s App., at 165. Weiland's inquiry to Gabor about the potential criminality of Paradine's behavior is one reason Pizza Hut argues that Weiland did not reasonably believe she was engaging in protected activity when she reported the incident to Fish that afternoon, but still proceeded to contact the police. Weiland disputes Pizza Hut's argument and claims she believed Paradine's behavior to be both a criminal matter and an instance of sexual harassment in violation of Pizza Hut policy. Pl.'s App., at 000041, 000165. Fish told Weiland that he would contact Pizza Hut's human resource personnel and Weiland believes Fish also spoke with Region Coach Jennifer Weber ("Weber") because Weber telephoned Weiland at the restaurant the following morning. Pl.'s App., at 000042. In addition, Weiland cannot recall for certain when she spoke with police officer Kevin VanOtterloo, but thinks it was that same afternoon or the following morning of June 27, 2000. Pl.'s App., at 000042.

On June 27, 2000, Fish made an unscheduled visit to Weiland's restaurant, in Weiland's words, "to see how I was doing" and "to make me feel comfortable." Pl.'s App., at 000042. That same morning Weber telephoned Weiland and informed Weiland that she and Fish were working with human resources and she could give Weiland verbal confirmation that Paradine would not be permitted to enter the restaurant. Weiland requested that Weber provide her with written documentation that Paradine not be allowed into the restaurant, but Weber told Weiland that she could not give her such documentation, but simply her word. The parties presently agree that Paradine is not a Pizza Hut employee but an inspector employed by Burns International/Wells Fargo. Paradine's true employer is material to Pizza Hut's additional argument that Weiland did not engage in protected activity because it alleges it cannot be held liable for a third-party vendor's conduct. However, it is Weiland's contention that during her phone conversation with Weber, Weber never informed Weiland that Paradine was not employed by Pizza Hut. Further, Weiland believed that neither Weber nor Fish knew at the time whether Paradine was in fact a Pizza Hut employee or not. In addition, Weiland disputes Pizza Hut's argument that Weiland believed Paradine's conduct to be only a criminal matter. Pizza Hut alleges that had Weiland believed Paradine's conduct to constitute sexual harassment, she would have filed a charge with the EEOC against Paradine. Weiland cites the fact that after Fish met with her and her husband regarding the incident with Paradine, Weiland never received further information regarding Pizza Hut's alleged investigation into the incident and thus took matters into her own hands through the police. Weiland admits that Paradine never entered the restaurant again after June 26, 2000 while she was gainfully employed by Pizza Hut. Pl.'s Response to Def.'s Stmt. of Undisputed Material Facts, at ¶ 35. However, Weiland also attributes Paradine's absence from the restaurant as a direct result of her obtaining a restraining order against him. Pl.'s App., at 000046.

As evidence of its position that it did not retaliate or discriminate against Weiland based on her sex when it terminated her,

Pizza Hut offers the testimony of two female shift managers at Weiland's restaurant who complained to Fish sometime in mid-July that Weiland was not working her scheduled hours and was fixing her time on the computer to reflect time she had not been at the restaurant. Def.'s Stmt of Undisputed Material Facts, at ¶¶ 40–41. Material to Pizza Hut's assertion is the fact that Fish supposedly conducted an investigation into the shift managers' accusations, collecting statements from other Algona restaurant employees and Weiland's time log reports. Def.'s App., at 74. During the investigation, Pizza Hut claims it discovered that Weiland was leaving the restaurant on personal business and without another manager on duty. Both Fish and Weber considered such conduct to be "stealing from" or "theft of" the company. Def.'s App., at 63, 92. However, Weiland disputes Pizza Hut's basis for her termination, in part because Weiland asserts that Fish never interviewed or confronted Weiland with the shift managers' allegations prior to her period review on August 8, 2000, the same day Fish suspended Weiland and the day before Pizza Hut terminated her employment. Pl.'s Resistance, at 6. Therefore, Weiland contends that Fish's investigation was a sham to cover up the fact that Pizza Hut terminated Weiland for reporting Paradine's sexual harassment.

## II. THE MOTION FOR SUMMARY JUDGMENT

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stil-*

*will,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000). The trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but rather is to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir. 1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999).

### B. The Parties' Burdens

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the record showing a "lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998). The opposing party is required to go beyond the pleadings and, by either affidavits or the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for

trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997). If the opposing party fails to make a sufficient showing of an essential element of a claim for which that party has the burden of proof, then the movant is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In considering a motion for summary judgment, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377.

## C. Summary Judgment In Employment Discrimination Cases

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)); *see also Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford* ). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,*

931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341; *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford,* 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341).

Nevertheless, the Eighth Circuit Court of Appeals also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134 (8th Cir.1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[2] Thus, what the plaintiff's evi-

---

**2.** In *Reeves,* the Supreme Court was considering a motion for judgment as a matter of law

dence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. The court will apply these standards to the defendant's motion for summary judgment, addressing each of the disputed issues in turn.[3]

### III. LEGAL ANALYSIS

#### A. Weiland's Retaliation Claim

■ Pizza Hut contends that it is entitled to summary judgment on Weiland's Title VII retaliation claim. Under the sexual discrimination provisions of Title VII, 42 U.S.C. § 2000e–3(a), an employer is forbidden from retaliating against employees for opposing sexual discrimination.[4] *Bogren v. Minnesota,* 236 F.3d 399, 407 (8th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001); *Ogden v. Wax Works,* 214 F.3d 999, 1007 (8th Cir.2000). That section of Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's "opposition" to an employment practice made unlawful under Title VII or because of the employee's "participation" in an investigation, proceeding, or hearing under Title VII. *Gagnon v. Sprint Corp.,* 284 F.3d 839, 849–50 (8th Cir.2002); *Hunt v. Nebraska Pub. Power Dist.,* 282 F.3d 1021, 1028 (8th Cir.2002). Weiland's activity in this case falls under the "opposition" clause of Title VII, if at all, because she had not actually filed a complaint with the EEOC before she was fired. Rather, Weiland complained to Pizza Hut in opposition to conduct in Pizza Hut's Algona restaurant that she believed was in violation of Title VII.

As the Eighth Circuit Court of Appeals has explained, " 'To establish a prima facie case of Title VII retaliation, [the plaintiff]

---

after a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby, Inc.,* 477 U.S. at 250–51, 106 S.Ct. 2505). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

3. Iowa courts look to Title VII, its regulatory interpretations, and its case law in resolving sex discrimination claims and retaliation claims under the ICRA. *See Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999); *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Therefore, while the court's analysis of Pizza Hut's Motion For Summary Judgment will refer only to Title VII, it also applies to Weiland's retalia-

tion and disparate treatment claims under the ICRA.

4. Section 2000e–3(a) provides:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
42 U.S.C. § 2000e–3(a).

must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action.'" *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir.2001) (quoting *Bogren*, 236 F.3d at 407); *see also Gagnon*, 284 F.3d at 850 (quoting *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713–14 (8th Cir.2000)); *Hunt*, 282 F.3d at 1028. The Eighth Circuit Court of Appeals has declared that "A finding of unlawful retaliation, however, is not conditioned on the merits of the underlying discrimination complaint.... A plaintiff need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 714 (8th Cir.2000); *see also Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189, 1195 (8th Cir.2001). Thus, Weiland does not have to prove that she was indeed sexually harassed, but merely that she reasonably believed that Paradine's conduct constituted sexual harassment in violation of Title VII. *But see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (*per curiam*) (declining to decide whether opposition clause requires only reasonable, good faith belief because even assuming this to be correct standard, no reasonable person could believe single incident of alleged sexual harassment violated Title VII where plaintiff's job required her to review sexually explicit statements).

Plaintiffs may satisfy this burden in one of two ways: through the presentation of direct evidence of discrimination invoking the mixed-motive analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973). Both Weiland and Pizza Hut agree that the *McDonnell Douglas* burden-shifting analysis applies to Weiland's claims. Thus, if Weiland meets this burden and establishes her *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. "However, the *McDonnell Douglas* battle is only begun with the prima facie case. If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833–34 (8th Cir. 2002) (citing *Kiel*, 169 F.3d at 1135). Therefore, to begin the burden falls to the defendant employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. If the employer meets this burden, "the*McDonnell Douglas* framework—with its presumptions and burdens"—disappears and the ball is again in the employee's court requiring proof that the employer's reason is pretextual. *St. Mary's Honor Ctr.*, 509 U.S. at 510, 113 S.Ct. 2742. In this case, Pizza Hut argues that, even if Weiland has established a *prima facie* case of discrimination, it rebutted any presumption of discrimination, having met its burden of production by proffering a legitimate, nondiscriminatory reason for her termination *i.e.*, that Weiland violated the rules and policies of the company when she made numerous changes to her time on the computer and did not adhere to the schedule.

Still, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy

of credence.'" *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, *St. Mary's Honor Ctr.,* 509 U.S. at 511, 113 S.Ct. 2742, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual,' *Burdine, supra,* at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Pizza Hut contends Weiland fails to establish the first and third elements of her *prima facie* case for retaliation because she cannot demonstrate she engaged in activity protected under Title VII or that her alleged protected conduct and her termination were causally related to her complaints of sexual harassment.

### 1. Weiland's conduct

Pizza Hut argues that Weiland's filing a police report against Paradine is not protected activity under Title VII. Pizza Hut claims that had Weiland believed that Paradine's actions constituted sexual harassment, she would have filed a formal charge of discrimination with the EEOC and ICRC against Paradine, which she did not.

Weiland asserts that she believed she was engaging in protected activity under Title VII when she called Fish from the restaurant within hours of Paradine's departure to report the incident. According to Weiland, she "was clearly looking for help and protection from her supervisor." Pl.'s Resistance, at 15. Weiland initially wanted to call the police, but Fish assured her he would contact Pizza Hut's human resource personnel to investigate the matter, but that such an investigation by human resources would probably not com-

mence for another two weeks because the person in charge was on vacation. Pl.'s App., at 000041. Weiland cites Fish's desire to contact human resources as an indication that Fish, based on his conversation with Weiland and her perception of the incident, also believed Paradine's conduct to implicate Title VII, coupled with the fact that Fish allegedly instructed Weiland to refrain from contacting the authorities. Pl.'s Resistance, at 16. However, Weiland asked her husband to contact the police that same day or the following morning regarding Paradine's conduct due to the fact that she was afraid Paradine might return and sexually harass her because Weber told Weiland she could not provide her with documentation that Paradine would not be allowed in the Algona restaurant, but merely offered Weiland verbal assurances. After police officer Kevin VanOtterloo came to the restaurant the morning of June 27, 2000 to go over the events of the previous day with Weiland, Fish proceeded to contact Pat Markey with Pizza Hut security. Police eventually arrested Paradine, who had successfully contacted Weiland at her home on at least two occasions within a matter of weeks of the incident.

Furthermore, Pizza Hut contends that Weiland did not take part in protected activity under Title VII because Paradine was not an employee of Pizza Hut. Paradine was employed by Burns International/Wells Fargo, an independent contractor whom Pizza Hut hired to conduct safety audits of its restaurants. Def.'s Stmt. of Undisputed Facts, at ¶ 12. However, the crux of Weiland's claim of retaliation is Pizza Hut's conduct in response to her complaints about Paradine's conduct, not Paradine's underlying conduct. As the court discussed earlier in its order, Weiland need not prove that Paradine's conduct constituted sexual harassment and thus was in fact unlawful under Title VII.

See *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 714 (8th Cir.2000); *see also Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189, 1195 (8th Cir.2001). Likewise, Weiland does not have to produce evidence as part of her *prima facie* claim of retaliation that Pizza Hut knew or should have known of the alleged harassment and took proper remedial measures to end the harassment. *See Crist v. Focus Homes, Incorp.*, 122 F.3d 1107, 1112 (8th Cir.1997) (considering employer's ability to control the environment and conditions within residential care facility where alleged third-party harasser resided, in its decision to deny employer's motion for summary judgment in which employer denounced liability for sexual harassment by non-employee resident of employer's residential care facility).

In *Trent v. Valley Electric Association, Inc.*, 41 F.3d 524, 525 (9th Cir.1994), the plaintiff was hired by the defendant utility company to read residential electric meters. The defendant required the plaintiff to attend a mandatory safety meeting conducted by a third party by the name of Ruralite Services, Inc. *Id.* The Ruralite Services instructor made numerous sexually offensive references in the presence of the plaintiff—the only female present. *Id.* The plaintiff complained to the defendant who subsequently fired the plaintiff. After her termination, the plaintiff brought a retaliatory discharge claim under Title VII against the defendant. The Ninth Circuit Court of Appeals determined that the plaintiff's claim did not necessitate its resolving the issue of whether "protected activity" under Title VII includes sexual harassment of employees by a non-employee in the workplace. *Id.* at 526. Instead, the court required the plaintiff simply "show that she had a reasonable belief that it was unlawful under Title VII for her to be subjected to a series of sexually offensive remarks at a seminar her employer required her to attend." *Id.* at 527; *see*

*Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992, 1000–05 (S.D.Ohio 2002) (finding employee acted in good faith when she complained to her employer about sexually explicit and insulting commentary made to the employee in the presence of male co-workers by a non-employee at a seminar sponsored by the employer) and (stating "A plaintiff does not need to show that the behavior complained of was in fact sexual harassment, only she had a good faith belief that it was when she engaged in the protected activity.") (citing *Forman v. Small*, 271 F.3d 285 (D.C.Cir.2001); *Yerry v. Pizza Hut of Southeast Kansas*, 186 F.Supp.2d 178 (N.D.N.Y.2002); *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249 (10th Cir.2001)). Therefore, the court need not determine whether "protected activity" under Title VII includes an employee's opposition and complaint to her employer about a third-party, safety auditor's conduct. *See Trent v. Valley Electric Assoc. Inc.*, 41 F.3d 524, 526 (9th Cir.1994). For the foregoing reasons, the court need not address Weiland's contention that Paradine was at the Algona restaurant performing business on behalf of Pizza Hut and acting as an agent of Pizza Hut. Pl.'s Resistance, at 16.

■ On this record, the court finds that Weiland could have manifested a reasonable belief that Paradine's conduct was both criminal and in violation of Title VII. By contacting Fish at his home after the incident and communicating how Paradine treated her during the inspection, Weiland was impliedly complaining that she had been treated unfairly because of her sex. Weiland's belief is made all the more reasonable considering that Fish initiated an investigation into the incident along with Pizza Hut's human resource department based on Weiland's understanding of the incident. *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir.1999) (declining to find employee engaged in protected activity un-

der Title VII when she spoke to EEO counselor because counselor did not initiate an investigation in response to employee's visit or notify supervisor of possible discrimination claims). This is also evidence that Pizza Hut was clearly aware of the complaint of sexual harassment made by the Plaintiff. *See Delashmutt v. Wis–Pak Plastics, Inc.,* 990 F.Supp. 689, 699 (N.D.Iowa 1998) (finding plaintiff engaged in protected activity when she rejected sexual advances by co-employee and reported her opposition to such incidents to her supervisor prior to her resignation) (citing 42 U.S.C. § 2000e–3(a)).

In addition, Weiland's filing a police report and obtaining a restraining order against Paradine can be likened to self-help remedies. Weiland commenced upon such a path only after Fish told Weiland it would be two weeks before human resources would begin their investigation. Furthermore, Weber declined to provide Paradine with documentation that Paradine would be prevented from entering the restaurant. Weiland also argues that such activities on her part could be interpreted as engaging in "participation" clause activity under 42 U.S.C. § 2000e–3(a). Because the court finds that Weiland has shown that she opposed a practice made unlawful under Title VII and that her complaint to Pizza Hut constituted protected activity, the court does not decide whether Weiland's pursuit of other avenues of redress or protection against Paradine amounted to "participation" clause activity.

#### 2. *Weiland's evidence of causal connection*

Weiland places great weight on the fact that she was terminated approximately two months after she complained to Pizza Hut about Paradine's conduct. By its own admission, the Eighth Circuit Court of Appeals concedes the difficulty in discerning why it reasoned in each of its cases that the evidence of temporal connection was or

was not sufficient to satisfy the causation requirement of a plaintiff's *prima facie* case of retaliation. *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833–34 (8th Cir. 2002). Regardless, the court described the length of time between protected activity and adverse action as important. *Id.* (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (per curiam) (internal quotation marks omitted) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."). In fact, the Eighth Circuit Court of Appeals has held that "a gap in time between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'" *Calder v. TCI Cablevision of Missouri, Inc.,* 298 F.3d 723, 726–28 (8th Cir. 2002) (quoting *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 989 (8th Cir. 1999)); *see also Sims v. Sauer–Sundstrand Co.,* 130 F.3d 341, 343 (8th Cir.1997).

For instance, the court in *Kipp v. Missouri Highway & Transportation Commission,* 280 F.3d 893, 897 (8th Cir.2002), found that a two-month interval between the plaintiff's complaint to the EEOC and her termination "so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's [plaintiff's] favor on the matter of causal link." *See Calder,* 298 F.3d at 726–28 (concluding seventeen month lapse between plaintiff's attorney sending letter to defendant and plaintiff's termination weakened inference of retaliatory motive). By no means did the court in *Kipp* disregard the significance of timing in its analysis of the element of causation to the

plaintiff's claim of retaliation, but instead reiterated its prior holding that "generally, more than a temporal connection ... is required to present a genuine factual issue on retaliation." *Id.* (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.) (en banc), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999)); *compare Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 988–89 (8th Cir.1999) (quoting *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir.1997), "Standing alone, a four-month gap 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.' ") *and Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684–85 (8th Cir.2001) (holding "seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally—and therefore causally—related") (citing *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346–47 (8th Cir. 1996) (finding one-month between charge of age-discrimination and termination, without more, insufficient to establish casual link), *cert. denied*, 519 U.S. 813, 117 S.Ct. 61, 136 L.Ed.2d 23 (1996)) *with Bassett v. City of Minneapolis*, 211 F.3d 1097, 1104 (8th Cir.2000) (finding less than two months between filing charge of discrimination and adverse action coupled with subsequent wave of increasing levels of disciplinary action created inference of causal connection). Moreover, the Eighth Circuit Court of Appeals has found that an already weak inference of retaliatory motive established by a time gap is reinforced and weakened further by other undisputed evidence of non-discriminatory reasons for the employee's termination offered by the defendant employer. *See Calder*, 298 F.3d at 726–28 (reasoning that doubt created by time gap was reinforced by undisputed evidence of employee's failure to meet her employer's expectations); *Horrocks v. Mechanical Breakdown Protection, Inc.*, 32 Fed.Appx. 159, 2002 WL 362938, at *1 (8th Cir.2002) (unpublished) (concluding uncontroverted evidence of employee's accumulation of absences and frequent instances of insubordination during three month time period between which employee engaged in protected activity and her termination did not establish casual connection).

In contrast, Weiland does not make conclusory, unsupported assertions that she was treated unfairly but disputes Pizza Hut's proffered legitimate, nonretaliatory reason for her termination—not working her scheduled hours and falsifying her time records both in violation of company rules. Rather, Weiland argues that the period of two months that elapsed between her complaint about Paradine to Pizza Hut management and her termination, coupled with her proof of pretext, establishes the required causal connection.

Weiland denies she violated a company rule because she had requested and received permission to work a reduced schedule from her supervisor, Fish, at a sales meeting in February 2000, approximately five months before she was terminated. According to Fish's direct supervisor at the time, Region Coach Weber, Fish had the authority to determine Weiland's schedule. Def.'s App., at 145. Furthermore, Weiland's proffered evidence of pretext includes an alleged conversation she had with Fish at the sales meeting at which time Fish told Weiland to "make sure that my time card matched my schedule." Pl.'s App., at 000013. To this end, Weiland contends that Fish taught her how to ensure that her time card matched her schedule by demonstrating the use of the special code "L" which stood for "other." Pl.'s Resistance, at 7–8. "I asked him how I should do it [change my clock times] and he told me to use code L for other." Pl.'s App., at 000089. Weiland alleges that she maintained this practice

beginning in February 2000 until the time of her termination in August 2000, and notes that the allegations that she manipulated her time only surfaced in mid to late July 2000 after she reported Paradine's conduct to Pizza Hut management. Def.'s App., at 135, 140. In addition, Weiland asserts that her shift managers were unaware of a lot of the business she was doing for the restaurant, including obtaining bids from contractors about having the restaurant redone and visiting creditors of whom Pizza Hut failed to pay. Pl.'s App., at 000089.

Finally, Weiland attempts to prove that Pizza Hut's reason for terminating her was pretextual by showing that Pizza Hut did not terminate Brent Rapien, a former male restaurant general manager of the Mason City, Iowa, Pizza Hut Carryout/Delivery restaurant, who worked as few as thirty hours some weeks during his tenure and was accused of not being in the restaurant during his scheduled hours. Pl.'s App., at 170.[5] The Eighth Circuit Court of Appeals has recognized such an attempt as a "common method of proving pretext," and stated that a plaintiff will generally do so by "show[ing] that it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case." *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir.2001) (citing *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1044 (8th Cir.2000)), "[I]nstances of disparate treatment can support a claim of pretext." *and* 1 Lex K. Larson, *Employment Discrimination* § 8.04 (2d ed.2001), ("Probably the most commonly employed method of dem-

onstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment."). While instances of disparate treatment may support an inference of pretext, to prove disparate treatment, the plaintiff must show that he or she was "similarly situated in all relevant respects" to a nonmember of the protected class who was more favorably treated. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir.2001); *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994); *Lanear v. Safeway Grocery*, 843 F.2d 298, 300 (8th Cir.1988) (citing *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 722 (8th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)). In order to determine whether a plaintiff has shown that the employees involved were "similarly situated," the court considers, for example, whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Cronquist*, 237 F.3d at 927; *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir.1994); *Boner v. Board of Comm'rs of Little Rock Mun. Water Works*, 674 F.2d 693, 697 (8th Cir.1982). It is not up to the employer to prove dissimilarity. *Lanear*, 843 F.2d at 301 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1254 (8th Cir. 1981). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is 'rigorous.'" *Cronquist*, 237 F.3d at 927 (quoting *Harvey*, 38

---

5. Pizza Hut alleges that it could have terminated Weiland on other grounds, including, but not limited to, the manipulation of inventory; false W–4 and labor information; and giving free coupons to friends and family members. Def.'s Reply Br., at 5 n. 3. Rapien stated in his affidavit that Fish did not confront Rapien about other policy violations at

the Mason City restaurant that are considered "terminable offenses" by company policy. Pl.'s App., at 170. These included regular uniform violations by Rapien and his staff; Rapien's attendance practices; and not keeping product spec charts on the wall during a nine-month period in which Rapien was upgrading equipment.

F.3d at 972). This is especially true in light of the Eighth Circuit Court of Appeals's determination in *Scott v. County of Ramsey*, 180 F.3d 913, 917 (8th Cir.1999) (citing *Harvey*, 38 F.3d 968, 972 (8th Cir. 1994)), that a "strong showing" that the disparately treated employees are "similarly situated in all relevant respects ... is required when the only evidence of pretext or discrimination is disparate treatment," as in the present case before this court. *See Mercer v. City of Cedar Rapids*, 104 F.Supp.2d 1130, 1163–64 (N.D.Iowa 2000) (summary judgment) (finding the circumstances in *Reeves*, 530 U.S. at 133, 120 S.Ct. 2097, would not fit those in which the Eighth Circuit Court of Appeals has held that a "strong showing" that the employees offered for comparison are "similarly situated in all relevant respects" is required i.e., *Scott*, 180 F.3d at 917) (reversal of court's denial of defendant's motion for judgment as matter of law and new trial at *Mercer v. City of Cedar Rapids*, 308 F.3d 840 (8th Cir.2002).) The court in *Scott* explained further that, "when ... the evidence of disparate treatment is offered as one component of circumstantial proof of pretext, the 'evidence does not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides [disparate treatment.]'" *Id.* at 917–18 (quoting *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 611 (8th Cir.1997)).

Weiland alleges she was similarly situated to Rapien, a male restaurant general manager of the Mason City, Iowa, Pizza Hut Carry-out/Delivery restaurant, because he performed the same job of restaurant general manager during most of the relevant time frame that Weiland was restaurant general manager of the Algona restaurant. Pl.'s App., at 169. Thus, Weiland claims that both she and Rapien had responsibilities in common. In addition, Weiland alleges that Rapien and she worked similar numbers of hours—forty hours each week—with Rapien working even fewer during some weeks. Pl.'s App., at 169. Both Weiland and Rapien were salaried employees and their hours reported on the computers in their respective restaurants did not affect either of their pay. Rapien admits in his First Affidavit to changing his time on the Mason City restaurant's computer to appear as though he had been in the restaurant during his scheduled hours when in fact he was not in the restaurant during all of the hours he reported, the same reason Pizza Hut stated for terminating Weiland. Pl.'s App., at 170. According to Rapien's First Affidavit, Fish knew that Rapien was changing the computer to reflect time when he was not actually at the restaurant, and approved of the practice so long as the restaurant continued to perform up to Pizza Hut standards. Pl.'s App., at 170. Weiland asserts that at the time the allegations against her surfaced and until her termination, the Algona restaurant "was running very well. The numbers will show that." Pl.'s App., at 000085. According to Weiland, "There was no indication whatsoever given to me at any time prior to August 8th that there was a problem at the store." Pl.'s App., at 000085.

On the other hand, Pizza Hut argues that Weiland and Rapien were not similarly situated because Fish never approached Rapien about an issue with his time clock reporting. Def.'s Supplemental Appendix, at 3. In his Second Affidavit, Rapien claims he only changed his time records to make them more accurate and, if anything, spent more time working in the restaurant than was reflected on the computer. Def.'s Supplemental Appendix, at 2. Furthermore, Pizza Hut argues that the inconsistencies with Rapien's reporting and the number of hours he was scheduled to work each week were attributable to his going back to school, a practice that Pizza Hut supported. However, Rapien did not ap-

ply for Pizza Hut's tuition reimbursement program for managers, and thus arguably attended classes on his own time. Def.'s Supplemental Appendix, at 2. Time which could be considered personal time.

■ First, although the casual connection between Weiland's complaint to Fish, Weber and Markey regarding Paradine's conduct and her termination for allegedly violating a company rule is not strong, the court reasons that the disputes between the parties might allow a trier of fact to infer a causal link between Weiland's complaining of the alleged discrimination and her termination. This conclusion "is consistent with the overarching philosophy of the *McDonnell Douglas* system of proof, which requires only a minimal showing before requiring the employer to explain its actions." *Smith,* 302 F.3d at 833 (citing *Sprenger v. Federal Home Loan Bank of Des Moines,* 253 F.3d 1106, 1111 (8th Cir. 2001)). Secondly, and in further support of the court's prior conclusion and its following determination regarding pretext, although Pizza Hut asserts that Rapien and Weiland are not similarly situated, the recantation of Brett Rapien in his Second Affidavit itself creates a genuine issue of material fact about the similarity of he and Weiland's respective job performance and whether disciplinary action toward either one or both was taken or withheld, precluding a grant of summary judgment. Furthermore, based on the summary judgment record as discussed in detail above, Weiland has demonstrated sufficient evidence, if believed, that the reason given for her termination—not working her scheduled hours and falsifying her time records to cover that fact in violation of a company rule—was a pretext for the true reason her employment was terminated—retaliation for her reporting Paradine's sexual harassment.

### B. Disparate Treatment Claim

Weiland contends that Pizza Hut discriminated against her because of her sex in violation of 42 U.S.C. § 2000e *et seq.* The United States Supreme Court recognizes two theories to prove employment discrimination under Title VII of the Civil Rights Act of 1991. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). One is the disparate treatment theory, and the other is the disparate impact theory. *Id.* Here, Weiland alleges disparate treatment by Pizza Hut. The United States Supreme Court defined disparate treatment in *International Bhd. of Teamsters:*

> Disparate treatment ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment....

*Id.* at 335 n. 15, 97 S.Ct. 1843.

There are two methods by which a plaintiff can attempt to prove intentional employment discrimination. Here, plaintiff Weiland does not assert that she has direct evidence that sex was a motivating factor in Pizza Hut's differential treatment of her. Therefore, the court turns to the three-stage, burden-shifting standard set forth in *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. 1817; *see also Texas Dep't of Com. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas* analysis, the plaintiff's usual burden to establish a *prima facie* case of employment discrimination is to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job he or she was performing; (3) the plaintiff

suffered adverse employment action, or was discharged; and (4) a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999).

Pizza Hut does not dispute that Weiland is able to satisfy the first, second, and third elements of her *prima facie* case, so the court finds that Weiland is female; she was capable of performing her job; and suffered an adverse employment action. Pizza Hut attacks the fourth element of Weiland's *prima facie* case. Pizza Hut contends that the record is devoid of any similarly situated male employee who was treated differently by Pizza Hut. Def.'s Br. in Support of Mot. for Summary Judgment, at 18. In response, Weiland offers the Affidavit of Brett Rapien (# 24) as well as allegations that Fish desired a male to be general manager of the Algona restaurant based on the "male-dominated" activities Fish organized for managers to take part in after sales meetings. Pl.'s App.. at 000086.

■ The court discussed the relevant law regarding Weiland's burden to establish that she and Rapien were similarly situated in all relevant respects in its analysis of Weiland's retaliation claim, and therefore will not repeat the discussion here. Furthermore, because the court found that the recantation of Brett Rapien in his Second Affidavit itself creates a genuine issue of material fact about the similarity of he and Weiland's respective job performance and whether disciplinary action toward either one, or both, was taken or withheld, summary judgment is also not warranted on Weiland's disparate treatment claim. Thus, the court assumes for the sake of this summary judgment motion that Weiland can establish her *prima facie* case of disparate treatment.

Finally, in light of the court's analysis of Weiland's disparate treatment claim as evidence of pretext for the true reason her employment was terminated—retaliation for her reporting Paradine's sexual harassment—the court concludes Weiland has produced evidence that could lead a reasonable jury to believe that her termination was not really due to her changing her time records, as Pizza Hut contends, but was instead due to her gender.

## IV. CONCLUSION

The court concludes that genuine issues of material fact preclude summary judgment on Weiland's retaliation and disparate treatment claims. Therefore, Pizza Hut's **motion for summary judgment is denied in its entirety.**

**IT IS SO ORDERED.**